**Larry SHAFFER, Northwest Financial, Express, Inc. and NWFX, Inc. Appellants/Cross–Appellees,**

v.

**Charles A. WILKES, Jr.; Charles A. Wilkes, Jr., P.C.; James K. Kreutz; and James K. Kreutz & Associates, P.C., Appellees/Cross–Appellants.**

Nos. 94–3318, 94–3320, 94–3360.

United States Court of Appeals, Eighth Circuit.

Submitted April 12, 1995.

Decided Sept. 8, 1995.

John R. Elrod, argued, Siloam Springs, AR, for appellant.

W. Asa Hutchinson, argued, Fort Smith, AR, for appellee.

Before WOLLMAN, Circuit Judge, MURPHY, Circuit Judge, and DAVIS,* District Judge.

DAVIS, District Judge.

Appellants Larry Shaffer, Northwest Financial Express, Inc. and NWFX, Inc., appeal the order of the district court [1] granting Appellee's motion for a new trial after the jury had returned a verdict in favor of Shaffer. The district court determined that after hearing and considering all of the evidence, the jury's verdict constituted a miscarriage of justice. Appellees have brought a cross appeal in the event the district court's order for a new trial is reversed, claiming they are nonetheless entitled to judgment because the district court erred by failing to instruct the jury on contributory negligence, and by failing to grant their motion for judgment as a matter of law. We affirm.

*Factual Background*

Larry Shaffer incorporated Northwest Financial Express, Inc. for the purpose of selling money orders. Shaffer also formed NWFX, Inc. and Gold Financial in connection with the money order business. Shaffer was the sole shareholder, President and CEO of all three corporations. In November 1984, Shaffer obtained a loan from City National Bank ("CNB") to fund operating capital for Northwest Financial Express. In order to process its money orders, Appellants needed

---

* The HONORABLE MICHAEL J. DAVIS, United States District Judge for the District of Minnesota, sitting by designation.

1. The Honorable H. Franklin Waters, United States District Judge for the Western District of Arkansas, Fayetteville Division.

to enter into a relationship with a bank. Originally, Northwest National Bank processed Appellants' money orders, but soon thereafter declined to be involved. On September 7, 1984, Appellants entered into a contract with CNB to process the money orders. At first the money orders trickled in, but by December 1984, CNB had received approximately 750,000 money orders for processing. Thereafter, CNB reconsidered its involvement in the money order business. A former employee of CNB, Ronald Floyd, testified at trial as to the events that took place after CNB became involved with Appellants. Floyd testified that it was his responsibility to extricate CNB from Appellants' business. On April 22, 1985, CNB entered into a new contract with Northwest Financial Express, that provided for CNB's withdrawal from the money order business. Floyd testified at trial that Shaffer breached this contract numerous times. Shaffer testified at trial that CNB was the first to breach its contract.

After CNB's withdrawal, the business was liquidated with CNB losing in excess of $1.5 million. Of that amount, $1,374,379 represented money paid out by CNB for money orders sold by Appellants, but which funds were not remitted to CNB by the sellers. Thereafter, the Arkansas Securities Department ordered Appellants to cease doing business. Appellants then filed for bankruptcy.

On July 10, 1989, Shaffer hired Appellee Wilkes and paid him a $25,000 retainer to investigate possible claims against CNB. It was understood that Wilkes would not institute a lawsuit because he was not a litigator. If a claim existed, Wilkes was to associate other counsel. Appellee Kreutz was thereafter contacted by Wilkes to determine if Kreutz would handle the litigation aspect of any possible claims against CNB. Appellants brought this action because it is their contention that Wilkes and Kreutz committed legal malpractice by allowing the statute of limitations to run on any claim he could have asserted against CNB.

At the close of Appellants' case and at the close of all the evidence, Appellees moved for judgment as a matter of law. The district court granted the motion as to Northwest Financial Express, Inc. and NWFX, Inc.,

finding as a matter of law, that Wilkes and Kreutz did not represent the corporations. The district court determined that there was a jury question as to whether Appellees entered into an attorney/client relationship with Shaffer in his individual capacity, and whether Appellees negligently carried out their duties in that respect. The district court also determined that Shaffer had standing to sue with respect to the damages suffered by the corporation and denied Appellees' motion for judgment as a matter of law as against Shaffer.

Shaffer's claims were then submitted to the jury, and the jury returned a verdict in favor of Shaffer and awarded him $275,000 in damages. Appellees again moved for judgment as a matter of law, or in the alternative, a new trial. The district court again denied Appellees' motion for judgment as a matter of law on the grounds that the evidence presented a question for the jury.

The district court did, however, agree with Appellees that if the jury verdict were allowed to stand, a miscarriage of justice would result. The district court determined that after hearing all of the evidence, Shaffer did not have a claim against CNB, and that Shaffer could not, therefore, maintain a legal malpractice action for failing to bring such a claim. The district court ordered a new trial.

On retrial, the jury found in favor of Appellees. On appeal, Appellants argue that the district court abused its discretion in granting a new trial as the verdict was not against the weight of the evidence and no miscarriage of justice occurred.

*Discussion*

■ A court may grant a new trial on the basis that the verdict is against the weight of evidence, if the first trial results in a miscarriage of justice. *White v. Pence,* 961 F.2d 776, 780 (8th Cir.1992).

> In determining whether a verdict is against the weight of the evidence, the trial court can rely on its own reading of the evidence—it can weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict.

*Id., quoting, Ryan v. McDonough Power Equip.,* 734 F.2d 385, 387 (8th Cir.1984).

In ruling on a motion for a new trial, the district court must articulate its reasons for finding the verdict is against the great weight of evidence. *White,* at 781, *citing, Washburn v. Kansas City Life Ins. Co.,* 831 F.2d 1404, 1409 (8th Cir.1987).

Great deference is accorded the trial court's judgment in this matter, *Brown v. Syntex Laboratories, Inc.,* 755 F.2d 668, 673 (8th Cir.1985), and is reversible only upon a strong showing of abuse. *King v. Davis,* 980 F.2d 1236, 1237 (8th Cir.1992). The district court's discretion is not boundless, for the court cannot simply "reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable." *White,* at 780, *citing, Fireman's Fund Insurance Co. v. Aalco Wrecking Co.,* 466 F.2d 179, 186 (8th Cir.1972), *cert denied,* 410 U.S. 930, 93 S.Ct. 1371, 35 L.Ed.2d 592 (1973).

In its order, the district court clearly articulated its reasons for finding the verdict was against the weight of the evidence and resulted in a miscarriage of justice. The district court correctly noted that for Shaffer to prevail in his legal malpractice case, he would have to show that he would have likely won a lawsuit against CNB if one had been timely filed. To this, the district court stated that it was its firm belief that "a lawsuit filed by Shaffer against City National Bank could be tried multiple times with a result against him in each instance ..." and that any such lawsuit would result in a "judgment against Shaffer for at least $1,500,000, the amount lost by the bank because of his dealings with it." *Shaffer et al. v. Wilkes et al.,* 93–5052, slip op. at 13, 1994 WL 854654 (W.D.Ark. 1994). The district court determined that the evidence showed Shaffer was the first to breach the agreements with CNB, thus relieving CNB of any further contractual obligations. *Id.,* at 14. Given the evidence presented at trial, the district court determined the jury "either did not truly understand

what it was necessary for [Shaffer] to show, or if it did understand, decided to award him damages against these Colorado lawyers in spite of the facts and law." *Id.,* at 15.

> The court simply believes and is convinced that a judgment in favor of Mr. Shaffer in this case awarding $275,000 in a situation where his business practices resulted in numerous people, including the bank, being financially harmed is neither fair, justified, or supported by the evidence, and the court simply cannot allow it to stand. It is not 'right' for Mr. Shaffer to recover when a great number of individuals and entities, some of which were on the extreme lower end of the economic scale, were so grievously harmed by his business practices in which he engaged up to the point that he was ordered to cease by proper authorities.

*Id.*

To reach the conclusions it did, the district court rejected the testimony of Shaffer, and accepted that of Ronald Floyd, the former employee of CNB, and Allen Bird, the trustee in bankruptcy. This, the district court was free to do. *See, White,* 961 F.2d at 782. Mr. Floyd testified at trial of numerous occasions where Shaffer's corporations failed to comply with their contractual obligations with CNB. Furthermore, Mr. Bird provided testimony supporting Mr. Floyd's testimony, that the corporations had no claim against CNB. Such evidence supports the district court's conclusions that Shaffer, not CNB, breached the contract and that Shaffer could not win a lawsuit against CNB. Accordingly, we find the district court did not abuse its discretion in granting a new trial. The order of the district court is affirmed.[2]

---

**2.** Because we affirm the district court's order granting a new trial, the issues raised by Appel-lees in their cross-appeal are now moot and need not be addressed.