No. 96-3470

Suzanne Harris,                      *
                                     *
                    Appellant,  *     Appeal from the United
                                *         States District Court for
        v.                      *         the Eastern District of
                                *         Missouri.
Secretary, United States        *
Department of the Army,         *
                                     *
                    Appellee.    *

Submitted: May 19, 1997

Filed: July 14, 1997

Before BEAM and LOKEN, Circuit Judges, and KYLE, District Judge.[1]

KYLE, District Judge

Suzanne Harris ("Harris") appeals the district court's[2]
decision to grant the Secretary of the United States Department
of the Army ("the Secretary") a new trial on Harris' Title VII
claim for retaliation, after a jury returned a verdict in her
favor.  Harris further appeals the district court's order of
judgment in favor of the Secretary on her Title VII claim of sex
discrimination for failure to promote.  Finally, she appeals the
district court's evidentiary rulings during the second trial on

_____

[1]     The Honorable Richard H. Kyle, United States District
Judge for the District of Minnesota, sitting by designation.

[2]     The Honorable Charles A. Shaw, United States District
Judge for the Eastern District of Missouri.

1

her retaliation claim.  We affirm.

## I.  Background

Harris began working for the St. Louis District, United States Army Corps of Engineers (the "District"), as a GS-9 archeologist in the Environmental Analysis Branch of the Planning Division (the "Branch").  In 1987, she was non-competitively[3] promoted to a GS-11 archeologist.  Harris' claims center around the District's failure to non-competitively promote her to a GS-12 archeologist and its subsequent treatment of her after she complained about not receiving this promotion.

Federal service jobs are classified on a "general schedule" ("GS") scale, and a federal employee's pay is based upon her GS level.  The federal government utilizes the same standards for classifying federal employees nationwide; the difference in levels is a function of the complexity and nature of the employee's work.  A GS-11 archeologist is a full performance, journeyman archeologist, while a GS-12 archeologist performs senior, complex work.

Two male archeologists worked in the Branch, Terry Norris ("Norris") and Dr. Michael Trimble ("Trimble").  Norris began working for the Branch in 1977, and he was promoted to GS-12 in 1982.  Trimble began working for the Branch under an

---

[3]      A non-competitive promotion occurs when an employee requests that her job be reclassified to a higher level because the employee believes she is performing the work of a higher level position and should be compensated for it.  It is non-competitive because a vacant position does not open up for which several candidates compete.

2

Intergovernmental Personnel Agreement,[4] and in April of 1991, the

---

[4] An Intergovernmental Personnel Agreement is a contractual arrangement in which a person with special expertise works "on loan" from a state agency or educational institution.

Branch hired him as a full-time, GS-11 archeologist. During his work for the Branch, Trimble became an expert in curation, oversaw the District's curation work, and authored the Army Corps of Engineers' regulations on curation.

In June 1991, Harris spoke with her supervisor, Daniel Ragland ("Ragland"), about obtaining a non-competitive promotion to a GS-12 position. Ragland agreed to assist her in obtaining this promotion. For civilian employees like Harris, a supervisor only recommends the employee for a non-competitive promotion. The Position Management and Classification Branch ("Classification Branch") ultimately determines whether a non-competitive promotion is warranted.

Ragland attempted to obtain non-competitive promotions for both Harris and Trimble. He submitted Trimble's application in 1991. The Classification Branch denied it because Trimble did not meet the requirement of being employed at the GS-11 level for at least one year. On February 21, 1992, Ragland submitted Harris' application for a non-competitive promotion. Owen Dutt ("Dutt"), the Chief of the Planning Division, denied Harris' application because a reduction-in-force ("RIF") was in place in the District, and it was considered inappropriate to promote employees during a RIF.

In April 1992, Ragland resubmitted both Harris and Trimble's applications for a promotion to GS-12 based on a generic job description he had created from Norris' existing job duties. On June 1, 1992, the Classification Branch denied both promotions, indicating that the Branch would have to justify the grade increases based on the workload and complexity of Trimble and Harris' duties, as opposed to their expertise, membership in

4

professional societies, and job histories.  It also recommended that Ragland resubmit both Harris and Trimble's applications for promotions after the Classification Branch performed desk audits to determine the exact nature of their jobs.

After the Classification Branch denied her promotion, Harris met with her second-in-line supervisor, Major Marszalek ("Marszalek") to ask for his support in obtaining a promotion. Marszalek told Harris he would not support her in this endeavor because he did not think her education or experience justified a promotion.

On Friday July 10, 1992, Marszalek instructed Ragland to have Harris work overtime during the upcoming weekend.  Harris objected based upon the short notice and because she had personal obligations over the weekend.  Ragland informed Harris that if she did not work, Marszalek would consider her to be insubordinate and fire her.  He also told her another male archeologist would be expected to work that weekend.  Harris, however, was the only archeologist who worked during this weekend.

On July 13, 1992, following the overtime incident, Harris filed a charge of discrimination with the Army Corps of Engineers' EEO officer, alleging she had been denied a promotion because of her sex.

Trimble received his non-competitive promotion to GS-12 on September 5, 1992.  His promotion occurred under a federal classification standard entitled "impact of person on the job." Because of Trimble's curation work, the Army Corps of Engineers designated the District as its nationwide Technical Center on

5

Expertise for curation, and the Branch formed a new section to oversee the curation program.  Trimble obtained his promotion

without a desk audit because the Classification Branch does not require a desk audit when a non-competitive promotion is based upon this standard and the employee's increased and complex job duties are evidenced.  On October 13, 1992, Harris filed her second EEO complaint, alleging discrimination based upon sex and retaliation.

During 1993, people within the Branch continued in their attempts to obtain a non-competitive promotion for Harris.  Dutt added to Harris' duties, hoping that this would lead to a promotion.   In February of 1993, the Classification Branch determined that a desk audit should be conducted on Harris. Barbara Scott ("Scott"), a classification specialist who had worked on neither Harris' nor Trimble's previous promotion requests, conducted the desk audit.  Harris objected to the audit because male employees were not audited before receiving non-competitive promotions.  In addition, Harris felt that the results of the audit would not be favorable because Marszalek had taken projects from her that would justify her promotion.[5]  Scott determined that Harris was performing GS-11 duties, based upon the level and complexity of her work, and thus, she did not recommend a promotion for Harris.

After filing her second complaint of discrimination, Harris

---

[5]     Harris claims that Marszalek took the following job responsibilities from her: 1) budgeting responsibilities and 2) the Whappalello programmatic agreement.  Ragland testified that Marszalek took budgeting responsibilities away from all Branch employees in 1993 in order to complete the fiscal year 1994 budget himself.  Ragland further testified that Marszalek reassigned the Whappalello project to another Branch employee because Harris had been working on it for more than one year, but had not completed it.  This employee finished drafting the agreement in a few weeks, and then Marszalek returned the project to Harris.

received lower performance evaluations.  In January of 1993,

Harris' evaluation was lowered from an "exceptional" to a "highly satisfactory" rating.[6]  Before January of 1993, management in the District was concerned that performance ratings throughout the District were inflated.  Dutt sent an e-mail message to all employees in the District, including Harris, informing them that the District needed to give more realistic ratings.  Ragland had wanted to lower Harris' 1993 performance evaluation to "fully satisfactory" because of concerns he had about her completing work in a timely fashion.  Dutt, however, would only support a lowering of one level, and thus, Harris received the "highly successful" rating.  In 1993, Ragland also lowered the ratings of two male employees from "exceptional" to "highly satisfactory."

Harris' Title VII claims for sex discrimination and retaliation were tried in 1995.  The retaliation claim was submitted to the jury, and the sex discrimination claim was also submitted to the jury , but for an advisory opinion only.  On June 23, 1995, the jury rendered a verdict in favor of Harris on both counts.  The district court directed the parties to submit proposed findings of fact and conclusions of law, as well as any post-trial motions by July 17, 1995.  On July 17, 1995, the Secretary moved for Judgment as a Matter of Law, Judgment Notwithstanding the Verdict, or in the alternative, for a New Trial on the retaliation claim.  On August 9, 1995, the district court entered partial judgment for Harris on the retaliation claim, and on August 23, 1995, the Secretary moved to alter or amend the judgment.  Rejecting the jury's advisory verdict, the district court, on October 23, 1995, made findings in favor of the Secretary and directed the entry of judgment in favor of the

---

[6]     Civilian employees' performances were rated based on five categories: 1) unsatisfactory; 2) needs improvement; 3) fully satisfactory; 4) highly satisfactory; and 5) exceptional. In 1990, Harris received a "highly satisfactory" rating.  In 1991 and 1992, she received an "exceptional" rating.

Secretary on the sex discrimination claim; the district court

also granted the Secretary's Motion for a New Trial on the retaliation claim.  In August of 1996, the district court conducted a new trial on the retaliation claim.  This time, the jury returned a verdict in favor of the Secretary.  This appeal followed.

## II.  Discussion

Harris advances four arguments on appeal: (1) the district court improperly granted the Secretary a new trial on the retaliation claim; (2) granting a new trial was inappropriate because it was inconsistent with the policies underlying the Federal Rules of Civil Procedure governing the granting of new trials; (3) the district court erred in rejecting the jury's advisory verdict on her sex discrimination claim; and (4) the district court improperly excluded probative evidence of discrimination during the second trial.

### A.  Grant of the Secretary's Motion for a New Trial

A district court may grant a new trial on the basis that the verdict is against the weight of the evidence, if failing to do so would result in a miscarriage of justice.  Shaffer v. Wilkes, 65 F.3d 115, 117 (8th Cir. 1995) (quoting White v. Pence, 961 F.2d 776, 780 (8th Cir. 1992)).  "In determining whether a verdict is against the weight of the evidence, the trial court can rely on its own reading of the evidence - it can 'weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict'."  White, 961 F.2d at 780 (quoting Ryan v. McDonough Power Equip., 734 F.2d 385, 387 (8th Cir. 1984)).  The district court, however, may not "reweigh the evidence and set aside the jury verdict merely

11

because the jury could have drawn different inferences or conclusions or because judges feel that other results are more

reasonable."  Id. (quotations omitted).

In ruling on a motion for a new trial, the district court must articulate its reasons for finding the verdict is against the weight of the evidence. Shaffer, 65 F.3d at 118. This Court accords great deference to the district court's decision to grant a new trial. Id. We will reverse this decision only upon a showing of an abuse of discretion.  Id.

The district court found the jury's verdict was against the weight of the evidence.  In so ruling, it properly articulated the legal standard upon which to evaluate Harris' retaliation claim.  To establish a prima facie case of retaliation, Harris needed to show: 1) she complained of discrimination; 2) the District took adverse employment action against her; and 3) the adverse action was causally related to her complaint.  See Smith v. St. Louis Univ., 109 F.3d 1261, 1266 (8th Cir. 1997).  Once Harris made her prima facie showing, the burden of production shifted to the Secretary to articulate a legitimate, nondiscriminatory reason for its actions.  Jackson v. Delta Special Sch. Dist. No. 2, 86 F.3d 1489, 1494 (8th Cir. 1996).  If the Secretary met this burden, the fact finder was left to determine if Harris presented evidence capable of proving that the District's proffered reasons for termination were a pretext for illegal retaliation.  Id.

Harris argues that the district court made several errors of law and usurped the jury's function of weighing evidence and determining the credibility of witnesses.

First, Harris contends that the district court erred when it characterized the "overtime incident" as one of her alleged acts

13

of reprisal because she never argued that it was an act of

retaliation.[7]  We disagree.  As Harris acknowledges, the district court properly determined that the "overtime incident" could not be an act of retaliation because it occurred before she complained about discrimination.  Even if Harris did not argue this was evidence of retaliation, the fact that the district court referred to it in its analysis of the Secretary's motion for a new trial does not demonstrate that the court abused its discretion in granting a new trial.  Harris neither maintains that the district court would have ruled differently on the motion had it not been for this incident, nor does she explain why this reference constitutes anything more than harmless error.  Accordingly, we find that the district court did not abuse its discretion in granting a new trial because it mentioned the "overtime incident" in its ruling on the motion.

Second, Harris argues that the district court improperly determined that her performance evaluation of "highly satisfactory" in 1993 could not constitute an adverse employment action. Any lowering in an employee's rating, Harris contends, is an adverse action if it actually did impair, or has the potential of impairing, the plaintiff in employment situations.  The Secretary responds that only negative or low performance evaluations constitute adverse employment ratings.

We need not determine if any lowering in an employee's performance evaluation can constitute an adverse employment action under Title VII.  In the instant case, the district court noted the Secretary presented uncontradicted evidence at trial explaining why Harris received the lower rating: the District

_____

[7]    The "overtime incident" occurred the weekend before Harris first complained of discrimination in 1992.  Because Harris was asked to work overtime before she complained about discrimination, the district court found this could not be considered an act of retaliation.

15

management intended to lower inflated performance reviews in the

entire District in 1993; Harris was aware of this; and male employees had their evaluations lowered in a similar manner. Thus, the district court concluded that Harris had presented no evidence establishing that the Secretary's proffered explanation for her lowered rating was a pretext for illegal retaliation.

Harris points to no evidence indicating that the Secretary's explanation is unworthy of credence and that it is a pretext for illegal retaliation. Because Harris has failed to show why the district court's determination on this issue was erroneous, we will not disturb its findings regarding her lower performance review.

Finally, Harris argues that the district court erred when it determined the desk audit was not an incident of illegal retaliation because it was used to help her receive a promotion, and not to prevent her from being promoted. Harris alleges that the following evidence at trial revealed that the Branch used the desk audit to deny her a promotion: 1) Dutt testified that a supervisor could prevent an employee from being promoted by controlling assignments; 2) Ragland testified that Marszalek changed Harris' assignments; and 3) Jack Rasmussen, Harris' former supervisor, testified about the negative impact of not receiving GS-12 assignments.

The Court disagrees that the evidence at trial demonstrated the Branch used the desk audit as a way to prevent Harris from receiving a promotion. Instead, the evidence at trial revealed that the Classification Branch recommended to the Branch that a desk audit be conducted on Harris after her promotion was denied in June of 1992, before she ever complained of discrimination. Additionally, we do not believe that Harris' alleged evidence

17

about the true reasons for the desk audits supports a reasonable inference that the Branch audited Harris in order to deny her a

promotion.  While Harris may have been aware that a desk audit would reveal she was not performing GS-12 work, the district court was not required to believe her contention that the audit must have been performed to thwart her from receiving a promotion.  See White, 961 F.2d at 781 (noting that district court, in determining whether to grant a new trial, is free to weigh and reject evidence because it finds it lacking in credibility or plausibility). Thus, we conclude that Harris has failed to prove that the district court abused its discretion when it granted a new trial on her retaliation claim.

**B.  Time in which the District Court Allowed the Parties to Make Post-Trial Motions**

On June 23, 1995, the jury returned a verdict in favor of Harris on her retaliation claim;  the clerk's office docketed this verdict on June 26, 1995.  The district court, however, did not direct judgment to be entered on the retaliation claim until August 9, 1995.  Harris argues that the district court's delay in entering judgment on the retaliation claim improperly extended the time in which the Secretary could file a motion for a new trial.

Rule 6(b) of the Federal Rules of Civil Procedure prohibits the enlargement of the ten (10) day period for filing motions for both judgment as a matter of law and a new trial.  See Fed. R. Civ. Pro. 6(b), 50(b), 59(b).  In the instant case, the district court gave the parties until July 17, 1995, to file post-trial motions, including motions for a new trial and judgment as a matter of law.  This is more than ten (10) days after the jury returned its verdict in favor of Harris on her retaliation claim. Harris asks this Court to rule that the district court's delay in

entering judgment created an impermissible extension of time in which the Secretary was allowed to file his motion for a new

trial.

We refuse to adopt Harris' suggested rule of law.  According to Rule 58 of the Federal Rules of Civil Procedure,"upon a special verdict, . . . the court shall promptly approve the form of the judgment, and the clerk shall thereupon enter it."  Fed. R. Civ. P. 58.  Rule 54(b) limits the provisions of Rule 58, stating:

> when more than one claim for relief is presented
> in an action . . . , the court may direct the
> entry of a final judgment as to one or more but
> fewer than all of the claims or parties only upon
> an express determination that there is no just
> reason for delay and upon an express direction
> for entry of judgment.

Fed. R. Civ. P. 54(b); see also Fed. R. Civ. P. 58.  Harris had two claims, only one of which the jury resolved.  Thus, Rule 54(b) applied to the jury's verdict.  We believe it is up to the sound discretion of the district court to determine when it should direct that a final judgment be entered under Rule 54(b). Harris has presented no evidence that the district court had an improper motive in waiting until August 9, 1995, to enter judgment on the retaliation claim.  Under these circumstances, this Court finds that the Secretary's Motion for a new trial was timely.

## C.  Rejection of the Advisory Jury's Verdict

When a district court submits a claim to an advisory jury, the court is free to accept or reject the jury's advisory verdict in making its own findings.  See Gragg v. City of Omaha, 20 F.3d 357, 358-59 (8th Cir. 1994).  This Court "reviews the district court's findings for clear error as if there had been no jury." Id.

Harris contends that the district court erred when it ruled

she was not qualified for a non-competitive promotion to a GS-12 archeologist position.  She alleges that the Secretary conceded she was qualified, a fact which the Secretary denies.

Because she has no direct evidence of discrimination, Harris' sex discrimination claim is governed by the burden shifting analysis first articulated in <u>McDonnell-Douglas Corp. v. Green</u>, 411 U.S. 792, 802-804, 93 S. Ct. 1817, 1824-25 (1973).  Under this analysis, Harris first needed to establish a prima facie case of discrimination. <u>Ryther v. KARE 11</u>, 108 F.3d 832, 836 (8th Cir. 1997) (en banc), <u>cert. denied</u> 65 USLW 3694.  In order to establish a prima facie case for failure to receive a non-competitive promotion, Harris had to demonstrate: 1) she was a member of a protected class; 2) she applied and was generally qualified for the up-grade; 3) she did not receive the job; and 4) similarly situated males received non-competitive promotions. <u>See</u> <u>Shannon v. Ford Motor Co.</u>, 72 F.3d 678, 682 (8th Cir. 1996); <u>Epstein v. Secretary, United States Dep't of the Treasury</u>, 739 F.2d 274, 278 (7th Cir. 1984).

Harris did not identify anything in the record evidencing that she was qualified for an upgrade because she was performing the duties of a GS-12 archeologist.  Harris' only argument regarding her qualifications, that the Secretary conceded she was qualified, is incorrect.[8]  The Secretary did not admit that Harris performed GS-12 duties; instead, he argued she was denied

---

[8]    The Secretary did concede that Harris was "qualified" to <u>compete</u> for a vacant GS-12 archeologist position, if any became available.  Because her claim dealt with the denial of a <u>non-competitive</u> promotion, the Secretary argued "the issue is not one of the qualifications of the individuals but the job duties of the positions; i.e. whether the position grades out at GS-11 or GS-12."  (Appellee's Answer to Appellant's Interrog. No. 4; Appellee's Trial Br. at 7-8.)

23

this promotion because her job duties were those of a GS-11

archeologist.  The district court properly determined that Harris was not qualified to be reclassified to a GS-12 position, and as a result, she failed to prove she was discriminated against.  We conclude, therefore, that the district court did not commit clear error in rejecting the advisory jury's conclusion and finding that the Secretary did not discriminate against Harris on the basis of her sex.[9]

## D.  Evidentiary Rulings

Harris contends that during the second trial, the district court improperly excluded evidence "about the initial discrimination" and refused to admit "any evidence of [Major Marszalek's] hostility toward women . . . ."  (Appellant's Br. at 41-42.)  The Secretary responds that the trial court did not, in a blanket fashion, refuse to admit any testimony about sex discrimination from the first trial.  In addition, the Secretary argues that the trial court properly limited highly prejudicial and irrelevant testimony of two witness about Marszalek's attitude toward women.

A district court has wide discretion in ruling on the admissibility of proffered evidence, and we review the district court's ruling on evidentiary issues for an abuse of discretion.  See Gillming v. Simmons Indus., 91 F.3d 1168, 1172 (8th Cir. 1996); Callanan v. Runyun, 75 F.3d 1293, 1297 (8th Cir. 1996) (noting district court is entitled to substantial deference in

---

[9] Because of our determination of this issue, we need not address Harris' other claims regarding why the district court erred in rejecting the advisory jury's opinion.  We also need not address her arguments regarding evidentiary errors in the first trial because none of these alleged errors affected evidence that would have established she was performing GS-12 duties.

determining whether evidence should be excluded under Federal Rules of Evidence 402 & 403).  Previously, we have cautioned

against the use of blanket evidentiary exclusions in discrimination cases, noting that "a plaintiff's ability to prove discrimination indirectly, circumstantially, must not be crippled by evidentiary rulings that keep out probative evidence because of crabbed notions of relevance . . . ."  Id. (quoting Estes v. Dick Smith Ford, Inc., 856 F.2d 1097, 1103 (8th Cir. 1988). "Because an employer's past discriminatory policy and practice may well illustrate that the employer's asserted reasons for disparate treatment are a pretext for intentional discrimination, this evidence should normally be freely admitted at trial." Hawkins v. Hennepin Technical Ctr., 900 F.2d 153, 155-56 (8th Cir. 1990)(holding plaintiff in a retaliation claim is allowed to offer evidence about sexual harassment that preceded her complaint and subsequent retaliation). Such evidence, however, "must assist in the development of a reasonable inference of discrimination within the context of each case's respective facts."  Callanan, 75 F.3d at 1297, (quoting Bradford v. Norfolk S. Corp., 54 F.3d 1412, 1419 (8th Cir. 1995)).

We find that the district court did not refuse to admit all evidence about the "initial discrimination."[10]  The portions of the second trial transcript to which Harris refers deal with the limited issue of whether Harris' written complaints of discrimination should be admitted.  (See Second Trial Tr. at 1-10.)  Harris argued to the district court that the sole purpose of these documents was to prove the first element of retaliation

_____

[10]    We also note the unique factual circumstances of this case.  The district court had already determined that the District did not discriminate against Harris when it did not promote her.  Thus, a finding that no "initial discrimination" occurred already existed when the second trial on the retaliation claim began.  To allow Harris to offer evidence about this "initial discrimination" would have impermissibly reopened an issue that was already decided against her.

27

- she complained about discrimination.  (<u>Id.</u> at 5.)  The trial

court ruled that because Harris would be allowed to testify about filing her charges of discrimination, the actual documentation need not be admitted. (Id. at 8.) In addition, Harris' written complaint of retaliation was received into evidence. (Id.) We do not believe that the district court "clearly abused its discretion" in making this ruling.

The district court also limited the testimony of two witnesses regarding Marszalek's attitude toward women. The Court did not allow Phillis Murphy to testify that she overheard Marszalek say he thought women should be pregnant all the time and at home. (Second Trial Tr. at 2-6-2-8.) The district court ruled that while this evidence was probative of the sex discrimination claim that was decided in the previous trial, it was more prejudicial than probative in a case of retaliation. (Id.) The district court also refused to allow Norma Hall to testify that Marszalek told her "the EEO is just bullshit, it's just for women." (Id. at 2-13.) Norma Hall, however, did testify that Marszalek told her he was angry because a discrimination complaint had been filed against him. (Id.)

We believe that the district court did not abuse its discretion in not allowing this specific testimony. See Callanan, 75 F.3d at 1298 (noting district court did not abuse discretion in limiting some testimony about the defendant's other acts of discrimination "perhaps most importantly" because the evidentiary ruling was not a blanket, pretrial exclusion). Because Harris had already tried and lost her sex discrimination claim for failure to promote, the district court was properly concerned that the issue of sex discrimination not be relitigated in her second trial on the retaliation claim. The district court allowed Harris to offer probative evidence of retaliation, that

29

Marszalek was angry and hostile over her charge of discrimination against him.  In this context, it was within the discretion of

the district court to determine that the prejudicial effect of evidence displaying Marszalek's general animus toward women outweighed its probative value.

Affirmed.

A true copy.

Attest:

Clerk, U.S. Court of Appeals, Eighth Circuit.