Cornelius COOPER, Michael Edwards, Charcella Green, Patricia Harris, Sarah Jean Harris, Irene McCullers, and Carolyn Wilson, Plaintiffs,

v.

SOUTHERN COMPANY, Georgia Power Company, Southern Company Services, Inc., and Southern Company Energy Solutions, Inc., Defendants.

Civil Action No. 1:00–CV–2231–ODE.

United States District Court,
N.D. Georgia,
Atlanta Division.

March 31, 2003.

R. Lawrence Ashe, Jr., Nancy E. Rafuse, Susan Elisabeth Himmer, Paul, Hastings, Janofsky & Walker, Atlanta, GA, for Movant.

Michael B. Terry, Joshua F. Thorpe, Steven Rosenwasser, Bondurant, Mixson & Elmore, Atlanta, GA, J. Keith Givens, Angela Joy Mason, Cochran, Cherry, Givens, Smith & Sistrunk, Dothan, AL, Hezekiah Sistrunk, Jr., Cochran, Cherry, Givens, Smith & Sistrunk Atlanta, GA, Jock Michael Smith, Cochran, Cherry, Givens & Smith, Tuskegee, AL, Johnnie L. Cochran, Jr., Cochran, Cherry, Givens & Smith, Los Angeles, CA, Johnnie L. Cochran, Jr., The Cochran Firm, Schnieder Kleinick Weitz,

Damashek, et al, New York, NY, for Plaintiffs.

W. Ray Persons, King & Spalding, Richard Gerakitis, Stephen William Riddell, Charles A. Hawkins, Frederick Cobb Dawkins, Ashley Zeiler Hager, Sheldon W. Snipe, Troutman Sanders, Eric Jon Taylor, Walter Christopher Arbery, Kelly D. Ludwick, Hunton & Williams, Atlanta, GA, for Defendants.

## ORDER

ORINDA D. EVANS, District Judge.

This civil matter alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq., and 42 U.S.C. § 1981 is presently before the court on all Defendants' motion for summary judgment on the individual claims of Plaintiff Irene McCullers. For the reasons set forth below, Defendants' motion is GRANTED.

---

1. Defendants The Southern Company ["TSC"] and Southern Company Energy Solutions, Inc. ["SCES"] move for summary judgment on the grounds that Plaintiff has never been employed by nor did she ever apply for positions at TSC or SCES. Plaintiff has failed to respond to SCES's motion and is deemed to have abandoned her claim against SCES. *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir.1995); *Hudson v. Norfolk Southern Ry. Co.*, 209 F.Supp.2d 1301, 1329 (N.D.Ga.2001).

A plaintiff must be an "employee" to bring a Title VII lawsuit. *Llampallas v. Mini–Circuits, Lab, Inc.*, 163 F.3d 1236, 1242 (11th Cir.1998). An "employee" for Title VII purposes is an "individual[ ] who receive[s] compensation from an employer." *Id.* at 1243. An "employer" is a "person engaged in an industry affecting commerce who has fifteen or more employees." 42 U.S.C. § 2000e(b). The analysis of whether a party is an employer appears to be the same under Title VII and § 1981. *See Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1330 (11th Cir.1998) (noting that these statutes have the same requirements of proof and use the same analytical framework); *Richard v. Bell Atlantic Corp.*, 946 F.Supp. 54, 61 n. 2 (D.D.C.1996);

## I. Facts

The following facts are undisputed unless indicated otherwise. Defendant Georgia Power Company ["GPC"] hired Plaintiff Irene McCullers ["Plaintiff"] in 1978 as a file clerk. Plaintiff is an African–American woman. The last position Plaintiff held while employed by GPC was Document Processing Operator Senior. This position was one pay grade lower than Chief Document Processing Operator. At GPC, Gail Ward ["Ward"], who worked in the same department as Plaintiff, held the position of Chief Document Processing Operator. Ward is a white female.

■ In January of 1997, Plaintiff and some of her GPC co-workers, including Ward, transferred from employment with GPC to Southern Company Services, Inc. ["SCS"].[1] When Plaintiff moved from GPC to employment with SCS, she was given the job title of Computer Operator I. This

*Sargent v. McGrath*, 685 F.Supp. 1087, 1089 (E.D.Wis.1988); *Alie v. NYNEX Corp.*, 158 F.R.D. 239, 245 n. 3 (E.D.N.Y.1994). Thus, Plaintiff has standing to sue TSC only if it can be shown that TSC constituted an "employer" from whom Plaintiff received compensation.

It is undisputed that TSC is a holding company which owns the stock of all other Defendants named in the complaint but has no employees. Womack Aff. ¶ 9. Plaintiff asserts that Defendants, including TSC, created SCS as a company-wide human resources department and use SCS's "extensive involvement in personnel policy-making and employee selection processes" to maintain "substantial involvement in GPC's personnel decisions." Plaintiff fails to point to any facts in the record to support these allegations; however, even if this were true, it is irrelevant with respect to McCullers' claims.

Plaintiff has failed to point to facts sufficient to support her argument that TSC is liable for any discriminatory acts. *See Wood v. Southern Bell Telephone and Telegraph Co.*, 725 F.Supp. 1244, 1249–50 (N.D.Ga.1989). Accordingly, Defendants' motion for summary judgment is GRANTED with respect to TSC and SCES.

change in Plaintiff's job title did not entail any change in Plaintiff's compensation level or seniority in comparison to her peers. Upon moving from GPC to SCS, Ward was given the title of Computer Operator Senior. Computer Operator Senior was one pay grade level higher than Computer Operator I. When Plaintiff moved from GPC to SCS, she was assigned to the Imaging and Micrographic group ["IMS"], which is a part of SCS's Production Systems Department. The Production Systems Department is part of SCS's Infrastructure Organization, which is part of SCS's larger Information Resources Department.

In 1997 when Plaintiff moved to SCS, white employees Mildred Brune ["Brune"], Shirley Keen ["Keen"], and Faye Starbird ["Starbird"] were already employed by SCS in the IMS, and they had job titles within the Accounting Clerk job family. Keen, Starbird, and Brune were hired by SCS more than six years before GPC hired Plaintiff. In early 1999, SCS decided to reduce and consolidate the number of job titles and job families in the Information Resources Department. As part of the consolidation effort, SCS merged the Computer Operator and the Accounting Clerk job families into one new job family titled Processing Operator. Plaintiff's job title was changed from Computer Operator I to Processing Operator I. This change in Plaintiff's job title did not entail any change in Plaintiff's compensation level, seniority, or job responsibilities.

Brune and Keen, who held SCS Accounting Clerk Coordinator titles, assumed Processing Operator I titles. Starbird's position, SCS Accounting Clerk Senior, was renamed Processing Operator II. In May 1999, SCS promoted Starbird to Processing Operator I. On March 4, 2000, SCS promoted Brune to Processing Operator Senior. According to Defendants, SCS promoted Brune to Processing Operator Senior because she performed her duties at a level that SCS viewed as consistently meeting and exceeding expectations. Defendants contend that SCS did not promote Plaintiff from Processing Operator I to Processing Operator Senior because, unlike Brune, Plaintiff's performance was not viewed as consistently meeting and exceeding job expectations, and because Plaintiff had ongoing deficiencies in work attendance and tardiness.

Plaintiff filed this suit on July 27, 2000, claiming that Defendants discriminated against her by denying her a progressive promotion to Processing Operator Senior and by paying her less than similarly situated white co-workers.

## II. *Defendants' Motion for Summary Judgment*

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the [Defendant] is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail in its motion for summary judgment, Defendants must show that the evidence is insufficient to establish an essential element of Plaintiff's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In ruling on Defendants' motion, the court must view the evidence in a light most favorable to Plaintiff. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). If Defendants make a sufficient showing, then Plaintiff "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)).

Under Title VII, an employer may be found liable for unlawful discrimi-

nation under any one of three discrete theories: disparate treatment discrimination, pattern and practice discrimination, or disparate impact discrimination. *EEOC v. Joe's Stone Crab,* 220 F.3d 1263,1273 (11th Cir.2000).[2] The first two theories require proof of discriminatory intent, while the third does not. *Id.* at 1273. Defendants argue that summary judgment is appropriate here because Plaintiff has failed to establish a claim of intentional discrimination or disparate impact. Plaintiff objects, arguing that there are genuine issues of material fact precluding summary judgment as to both Plaintiff's intentional discrimination and disparate impact claims. Because the theories place different burdens on the parties, the Court will address them separately.

### A. *Intentional Discrimination*

■ To establish a prima facie case of race discrimination under a disparate treatment theory, Plaintiff may offer either direct or circumstantial evidence of discriminatory intent. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Alexander v. Fulton County, Ga.,* 207 F.3d 1303 (11th Cir.2000). If the plaintiff presents direct evidence of discrimination, the defendant is then required to prove by a preponderance of the evidence that it would have taken the adverse employment action even in the absence of discrimination.

■ To make a prima facie case using circumstantial evidence, a plaintiff may use the test established in *McDonnell Douglas.*[3] A plaintiff may establish a prima facie case by demonstrating 1) that he

belongs to a protected class under Title VII; 2) that he was qualified for and applied for the job; 3) that he was rejected; and 4) that others who were not members of the protected class were promoted. *Denney v. City of Albany,* 247 F.3d 1172, 1183 (11th Cir.2001); *Combs v. Plantation Patterns,* 106 F.3d 1519, 1543 (11th Cir. 1997).

■ If the plaintiff provides sufficient circumstantial evidence to support a prima facie case, a legal presumption of unlawful discrimination arises and the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the challenged employment action. *McDonnell Douglas,* 411 U.S. at 802–03, 93 S.Ct. 1817. The defendant's burden is "exceedingly light" and is "one of production, not proof." *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. If the defendant satisfies its burden, the presumption of discrimination is eliminated and the plaintiff must be given an opportunity to prove by a preponderance of the evidence that the legitimate reason offered by the defendant is a pretext for discrimination. *Id.*

■ A plaintiff may also use statistical evidence to establish either a prima facie case of discrimination or pretext. *Brown v. American Honda Motor Co., Inc.,* 939 F.2d 946, 952 (11th Cir.1991). Statistics may be used to establish an individual plaintiff's claim that a pattern or practice of discrimination existed, or simply to bolster the plaintiff's circumstantial evidence of individual disparate treatment. Under the pattern and practice theory, the plaintiff must provide evidence sufficient to

---

**2.** Section 1981 provides a cause of action only for claims of intentional discrimination. *See Washington v. Davis,* 426 U.S. 229, 239, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976); *Ferrill v. Parker Group, Inc.,* 168 F.3d 468, 472 (11th Cir.1999).

**3.** The *McDonnell Douglas* standard for a prima facie case is applicable in employment discrimination suits brought under 42 U.S.C. § 1981. *Sledge v. Goodyear Dunlop Tires North America, Ltd.,* 275 F.3d 1014 (11th Cir. 2001).

establish that impermissible discrimination was the employer's "standard operating procedure." *Joe's Stone Crab,* 220 F.3d at 1274–75, 1286–87 (internal quotation marks and citation omitted). Even if the statistical evidence is insufficient to meet this standard, evidence establishing a discriminatory pattern "is probative of motive and can therefore create an inference of discriminatory intent with respect to the individual employment decision at issue." *Parker v. Burnley,* 693 F.Supp. 1138, 1153 (N.D.Ga.1988) (internal quotation marks and citation omitted). Whether the plaintiff argues that the statistical evidence supports a pattern or practice claim or simply constitutes evidence of disparate treatment, "[t]he ultimate inquiry remains whether the plaintiff has demonstrated that the defendant *intentionally* discriminated in refusing to enter into a contractual relationship." *Brown v. American Honda Motor Co.,* 939 F.2d 946, 952 (11th Cir.1991) (citing *Grigsby v. Reynolds Metals Co.,* 821 F.2d 590, 595 (11th Cir.1987)).

## 1. *Disparate Treatment*

### *Promotion Discrimination*

 Defendants first argue that they are entitled to summary judgment on Plaintiff's promotion claim because Plaintiff has failed to establish a prima facie case of promotion discrimination. To establish a prima facie case for alleged failure to receive a promotion, Plaintiff must demonstrate that 1) she was a member of a protected class; 2) she applied and was generally qualified for the up-grade; 3) she did not receive the promotion; and 4) a similarly situated white employee received promotion over Plaintiff. *See, e.g., Denney v. City of Albany,* 247 F.3d 1172,

1183 (11th Cir.2001); *Harris v. Sec'y, U.S. Dep't of the Army,* 119 F.3d 1313, 1321 (8th Cir.1997) (applying test in context of non-competitive promotion). In the complaint, Plaintiff alleges that she was discriminated against when co-worker Brune became a Processing Operator Senior while Plaintiff remained a Processing Operator One. This was a "progressive promotion" for Brune based on job performance.[4]

 Defendants are entitled to summary judgment on this claim because Plaintiff has failed to establish a prima facie case of promotion discrimination. Defendants state and Plaintiff does not contend that progressive promotions are not awarded to one employee to the detriment of another. Gantt Dec. ¶ 5. Therefore, Plaintiff cannot show that a similarly situated white employee received a promotion over her because she and Brune were not competing for the same position. Nor can Plaintiff establish that she was qualified for a promotion. To qualify for progressive promotion from Processing Operator I to Processing Operator Senior, SCS requires only that the employee perform at an overall level that "consistently meets and exceeds expectations." *Id.* According to Defendants, Plaintiff was not a consistently strong performer—she did not consistently perform at a level that met and exceeded the expectations of her job. Gantt Dec. ¶¶ 6–8; Patten Dec. ¶¶ 6, 18. Plaintiff argues that she was in fact qualified for a promotion because she received better evaluations than her alleged comparators and because her alleged performance deficiencies were not actually considered serious performance problems by

---

4. Plaintiff also contends in the complaint that she was discriminated against when, at the time of her transfer from GPC to SCS, co-worker Ward was promoted to Processing Operator Senior but Plaintiff was not. Be-

cause Ward's promotion occurred in 1997, any claim based on the transfer is barred by the applicable statutes of limitations for Title VII and Section 1981 claims.

Defendants. According to Plaintiff, she had the requisite experience and knowledge for the job and was rated in meets and exceeds expectations range, just as Brune was. Patten Dec. ¶ 6; Gantt Dec. ¶ 7. Plaintiff also argues that her alleged tardiness and absenteeism could not have been considered a serious problem because she was rated at the consistently meets and frequently exceeds level and her 1999 and 2000 evaluations do not specifically mention any such problems. However, Plaintiff has produced no evidence to support her contention that she was rated at the consistently meets and frequently exceeds level. Further, a supervisor's testimony that he would note areas of weakness in an employee's performance in the employee's formal evaluation does not establish that Defendants did not consider Plaintiff's tardiness and absenteeism in making promotion decisions. Gantt Dep. 25.

Plaintiff also points to evidence that she received higher percentage merit increases in 1998 and 1999 than Brune did. Patten Dec. ¶¶ 14, 20. However, Plaintiff provides no evidence with respect to how the exact percentage of increase is determined. Further, as Defendants note, Brune received a higher percentage merit increase that Plaintiff in 2000, the year in which Brune was promoted. Thus Plaintiff's evidence with respect to the percentage of merit increases is insufficient to create an issue of fact as to whether Plaintiff was qualified for a promotion.

Because Plaintiff has failed to state a prima facie case of promotion discrimination and cannot otherwise establish that intentional discrimination occurred, Plaintiff's promotion claim must fail. Accordingly, Defendants' motion for summary judgement is GRANTED with respect to Plaintiff's promotion claims.

*Compensation Discrimination*

■ Plaintiff contends that Defendants discriminated against her by paying her less than similarly situated white co-workers. To make out a prima facie case of compensation discrimination, Plaintiff must establish the following four elements: 1) that she is a member of a protected class; 2) that she received low wages; 3) that similarly situated persons outside the protected class received higher wages; and 4) that she was qualified to receive the higher wages. *MacPherson v. University of Montevallo*, 922 F.2d 766, 774 (11th Cir.1991) (applying the test in an age discrimination case). Defendants do not dispute that Plaintiff is a member of a protected class or that she received low wages but argue that they are entitled to summary judgment on this claim because Plaintiff has failed to establish that she was similarly situated to any of her white co-workers who received higher pay.

■ "In a comparator analysis, the plaintiff is matched with a person or persons who have very similar job-related characteristics and who are in a similar situation to determine if the plaintiff has been treated differently than others who are similar to him." *Id.* Plaintiff claims that co-workers Ward, Brune, Starbird, and Keen are similarly situated white employees who are paid more than she is. Starbird and Keen constitute proper comparators because they hold the same position as Plaintiff and thus perform the same functions as Plaintiff. Brune is also a proper comparator to the extent that she held the same title as Plaintiff during the period in question.

■ Defendants however contend that Plaintiff received lower compensation than Brune, Starbird, and Keen because these co-workers have been employed by Defendants for at least six years more than Plaintiff. Seniority constitutes a le-

gitimate non-discriminatory explanation for a difference in pay. *Mulhall v. Advance Security, Inc.,* 19 F.3d 586, 599 (11th Cir.1994). Plaintiff attempts to establish pretext by arguing that seniority cannot explain the pay differential because Plaintiff received a higher percentage merit increase than Brune and Keen in 1998 and 1999. Plaintiff also argues that seniority does not explain why Starbird earns a higher salary than Plaintiff because Starbird earned less than Plaintiff in 1999. However, that Brune and Keen received a lower percentage increase does not contradict Defendants' evidence that Brune and Keen received a higher base salary because they had worked for Defendants longer than Plaintiff had. That Starbird earned less than Plaintiff in 1999 but now earns more than Plaintiff is attributable to Starbird's seniority to Plaintiff and promotion in 1999 to the same position as Plaintiff. Plaintiff also argues that Defendants did not specifically refer in their discovery responses to seniority as a reason for the pay disparity and do not rely on seniority to explain pay disparities with respect to another Plaintiff is evidence of pretext. However, these minor variances are insufficient to support a finding of pretext.

Nor has Plaintiff provided sufficient evidence to establish that Ward was improperly paid more than she was. Plaintiff has arguably made out a prima facie case by showing that she and Gail Ward, a white employee, perform the same or similar work and Ward is more highly compensated.

Q Is it fair to say that Ms. Ward's position is the same as or similar to Ms. McCullers'?

A Yes.

Gantt Dep. at 70–71. There is also evidence that there was little variation in the daily responsibilities between the two jobs. *Id.* at 16–17.

In response, Defendants point out that Plaintiff has never held the same title as Ward. At all relevant times Ward, a Processing Operator Senior, has been classified as one notch above Plaintiff, a Processing Operator I. And, while Plaintiff's supervisor did state that he considered her position "the same or similar to" Ward's position, he also testified that in her higher position, Ward faced higher expectations than Plaintiff. *Id.* at 16–17. Defendants point out that Plaintiff has never met Defendants' job assessment criterion of "meets and exceeds expectations" although she has always been found to "meet expectations". Under Defendants' policy, this is not enough for a progressive promotion. Also, Defendant states that Plaintiff has had problems with tardiness and absenteeism. *See* Gantt Dep. 42–43, 45–47, 54; Gantt Decl. ¶ 6, 18. Plaintiff does not deny this. Plaintiff Dep. 76–77, 179–80, 263–67.

In response to Defendants' statement of its reasons for not having paid Plaintiff at the Processing Operator Senior level (Ward's classification), Plaintiff basically argues that Defendants' assessment of her performance level is incorrect. This is not enough to establish pretext.

 However, Plaintiff provided statistical evidence of racial imbalances in Defendants' hiring and compensation practices as evidence of pretext. Specifically, Plaintiff has offered statistical reports to support her claim that Defendants' hiring and compensation practices had a discriminatory effect on black employees. Plaintiff argues that the reports of her expert, Dr. Madden, which find statistically significant disparities in the hiring and compensation of black employees relative to white employees, are evidence from which a reasonable fact-finder could determine that intentional discrimination occurred. Defendants contend that Plaintiff's general-

ized statistics are insufficient to support Plaintiff's claims of intentional discrimination.

■ As the Supreme Court has noted, while statistical evidence may allow the District Court to "determine ... that the (racial) composition of defendant's labor force is itself reflective of restrictive or exclusionary practices .... such general determinations, while helpful, may not be in and of themselves controlling as to an individualized hiring decision, particularly in the presence of an otherwise justifiable reason for refusing to hire." *McDonnell Douglas,* 411 U.S. at 805 n. 19, 93 S.Ct. 1817 (internal quotation marks and citation omitted). In this case, Plaintiff's statistical evidence is insufficiently tailored to support her individual claims.

Plaintiff's statistics compare the promotion rate of employees within the same pay grade who perform similar job functions; however, these statistics generally fail to compare similarly situated individuals, significantly diminishing the probative value of any disparity. For example, Plaintiff's statistics do not account for differences in the type or level of the employees' applied skills, both of which are highly related to promotion and compensation decisions. Plaintiff does not provide statistics comparing employees with equivalent work experience in specific job categories or job progressions. Plaintiff relies instead on a statistical analysis of a company-wide data pool and makes no attempt to narrow the data pool to the locations in which she worked or the positions which she challenges. As this Court noted in the order denying class certification, the probative value of Plaintiff's statistical evidence is therefore highly questionable, in significant part due to the treatment of factors such as experience, education, and specific promotion processes. *Cooper v.*

*Southern Company,* 205 F.R.D. 596, 613–14 (N.D.Ga.2001).

The analytical deficiencies of Plaintiff's statistics diminish the probative value of this evidence such that it cannot by itself support a claim of disparate treatment. *See Brown v. American Honda Motor Co.,* 939 F.2d 946, 952 (11th Cir.1991) (holding that summary judgment was appropriate where plaintiff's statistical evidence, which lacked specific analytical foundation and thus failed to show that employer maintained discriminatory intent, was insufficient to establish prima facie case or pretext); *Hawkins v. Ceco Corp.,* 883 F.2d 977, 985 (11th Cir.1989) (holding that plaintiff's statistical evidence failed to establish prima facie case or pretext where evidence failed to make specific analytical comparisons); *cf. James v. Stockham Valves & Fittings Co.,* 559 F.2d 310, 330 (5th Cir.1977)[5] (holding that plaintiff's evidence of statistical disparities in hiring, promotion and compensation was sufficient to support claim of intentional discrimination where the employment decisions were based on *completely* subjective criteria). Accordingly, Defendants' motion for summary judgment on Plaintiff's claim of compensation discrimination is GRANTED.

**2. Pattern and Practice**

Plaintiff has failed to create a genuine issue of material fact as to whether a pattern or practice of discrimination existed. As discussed above, Plaintiff has provided statistical evidence in an attempt to establish a claim of pattern and practice discrimination. While "statistics as to [Defendants'] employment policy and practice may be helpful to a determination of whether [Defendants'] refusal to [ ]hire [Plaintiff] in this case conformed to a general pattern of discrimination against

**5.** This Court adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981. *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

blacks," *McDonnell Douglas,* 411 U.S. at 805, 93 S.Ct. 1817, to have probative value, statistical evidence must be tailored to the appropriate types of decisions and specific populations involved. *Wards Cove Packing Co. v. Atonio,* 490 U.S. 642, 651–55, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989); *In re: Employment Discrimination Litig. Against the State of Ala.,* 198 F.3d 1305, 1312 (11th Cir.1999). The analytical deficiencies of Plaintiff's statistical evidence, discussed above, render this evidence insufficient to support a pattern or practice claim.

In addition to Plaintiff's expert reports, Plaintiff offers Defendants' internal personnel documents to support her argument that Defendants maintained a pattern or practice of compensation discrimination. While these documents indicate some disparity in compensation between black and white employees, these documents are not probative as to whether Defendants intentionally discriminated against Plaintiff during the period in question. The documents indicate average salaries of employees divided by racial classification but do not control for factors such as education, experience or skill level and thus cannot prove that Defendants discriminated on the basis of race. Plaintiff has thus failed to come forward with evidence sufficient to prove that intentional discrimination was Defendants' "standard operating procedure." *Joe's Stone Crab,* 220 F.3d at 1274–75 Accordingly, Defendants' motion for summary judgment with respect to Plaintiff's pattern and practice claim is GRANTED.

B. *Disparate Impact*

■ Finally, Defendants argue that Plaintiff has failed to establish a claim of disparate impact under Title VII. To establish a claim under a theory of disparate impact, Plaintiff must show 1) the existence of a statistically significant disparity among members of different groups affected by employment decisions; 2) the exis-

tence of a specific, facially neutral employment practice; and 3) the existence of a causal nexus between the specific, facially neutral employment practice and the statistically significant disparity. 42 U.S.C. § 2000e–2(k); *Joe's Stone Crab,* 220 F.3d at 1274; *In re: Alabama,* 198 F.3d at 1311–14. Defendants contend that Plaintiff's statistics, which are not adjusted to account for differences among various positions and the respective skill and education levels required, are insufficient to establish a statistically significant disparity required to state a claim and that even if Plaintiff could establish such disparity, she has failed to show a causal link to a neutral employment practice.

As evidence of a facially neutral policy, Plaintiff points to Defendants' promotion and compensation policies, which Plaintiff contends permits subjective, discretionary, and unmonitored decisions. While Plaintiff has failed to identify in her response to Defendants' motion for summary judgment a specific policy which has had an impermissibly discriminatory impact on her, Plaintiff provided evidence in her motion for class certification to support her claim that Defendants allowed the use of subjective criteria by decisionmakers in each of its subsidiaries.

■ However, simply showing that Plaintiff was subject to subjective policies does not establish a prima facie case of disparate impact. Plaintiff must also show the existence of a causal nexus between these specific, facially neutral employment practices and a statistically significant disparity. " '[P]laintiff must offer statistical evidence of a kind and degree sufficient to show that *the practice in question* has *caused* the exclusion of applicants for jobs or promotions because of their membership in a protected group.' " *Joe's Stone Crab,* 220 F.3d at 1275 (quoting *Watson v. Fort Worth Bank & Trust,* 487 U.S. 977,

994–95, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988)). In this case, Plaintiff has failed to establish that manager discretion in compensation and promotion decisions caused a statistically significant disparity.

To establish the first element of a disparate impact claim, Plaintiff relies on her expert's report which finds statistically significant disparities in the compensation of black employees relative to white employees. As Defendants note, however, to have probative value, statistical evidence must be tailored to the appropriate types of decisions and specific populations involved. *Wards Cove Packing Co. v. Atonio,* 490 U.S. 642, 651–55, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989); *In re: Alabama,* 198 F.3d at 1312. While Plaintiff's expert reports an over-all statistical disparity between black and white employees in compensation, Plaintiff's evidence generally fails to compare similarly situated individuals, significantly diminishing the probative value of any disparity. For example, Plaintiff's statistics do not account for differences in the type or level of the employees' applied skills, both of which are highly related to compensation.

Even if these statistics were sufficient to establish a statistically significant disparity, Plaintiff cannot establish the existence of a causal nexus between the disparity and a specific, facially neutral employment practice. As noted above, Plaintiff has failed to indicate a specific facially neutral practice other than the use of manager discretion in compensation decisions. Further, Plaintiff has presented only company-wide statistics and does not tailor the data to control for factors such as skill level and experience. For Plaintiff to establish that the use of a practice as broad and amorphous as manager discretion causes a statistically significant disparity would require Plaintiff to eliminate the effect of variation in these factors, which she has failed to do in the statistics cur-

rently before the Court. Therefore, Defendants' motion for summary judgment with respect to Plaintiff's disparate impact claim is GRANTED. *Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1118 (11th Cir. 1993) (holding that employer is entitled to summary judgment where plaintiff fails to provide evidence necessary to prove at trial that there is disproportionate impact of employer's policy on black employees).

For the reasons stated above, Defendants' motion for summary judgment [# 200] is GRANTED.