# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-1275
_____

| | | |
|---|---|---|
| Oleta C. Van Steenburgh, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| The Rival Company, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted:  September 24, 1998

Filed:   February 26, 1999
_____

Before WOLLMAN, JOHN R. GIBSON, and MORRIS SHEPPARD ARNOLD,
   Circuit Judges.
_____

WOLLMAN, Circuit Judge.

Oleta Van Steenburgh appeals from the district court's grant of judgment as a
matter of law in favor of the Rival Company (Rival) on her sexual harassment claim
under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17.  We
reverse and remand.

# I.

Van Steenburgh began working at Rival's manufacturing plant in 1988. Her immediate supervisor was Larry Esser. Van Steenburgh had a good working relationship with Esser until late 1989 or early 1990, when he told Van Steenburgh that he was interested in seeing her socially. From that point until Van Steenburgh left Rival in June of 1995, Esser repeatedly confronted Van Steenburgh in private and proposed that she engage in a romantic relationship with him. Esser also touched Van Steenburgh on numerous occasions. In early 1990, Esser followed Van Steenburgh to a local drugstore, approached her car, and asked her to go somewhere to "be alone" with him. About six months later, while the two were playing cards with their spouses, Esser grabbed Van Steenburgh's leg under the table. On another occasion, Esser entered her office, put his arms around her, and told her that he wished he could take her away from her husband.

In early 1994, Esser entered Van Steenburgh's office and again asked why she would not have an affair with him. He grabbed her and put his arms around her, but she pushed him away. He became angry with her and said, "You owe me and you're going to pay." In March 1995, Esser approached Van Steenburgh in an aisle of the plant, put one arm around her, and put one hand on her breast. He said he would stop harassing her if he could "just touch [her] down there." During the time between these direct physical contacts, Esser stared at Van Steenburgh, entered her office uninvited, and repeatedly asked her to have an affair with him.

Van Steenburgh formally complained about Esser's conduct to Carol Bottcher, the plant manager, in May of 1992 and in early 1994. Bottcher verbally warned Esser once, but failed to make any written record of the complaints. When the harassment continued after Bottcher's warning, Van Steenburgh complained repeatedly about Esser and Bottcher to another supervisor, Tommy Toliver. Toliver insisted there was

nothing he could do about Esser's conduct or Bottcher's failure to act, and he indicated that Bottcher would not take more severe action against Esser.

On June 8, 1995, in front of Bottcher, Toliver, and numerous co-workers, Esser informed Van Steenburgh that Bottcher had decided to place another employee above her on the production line. Van Steenburgh testified that Esser "got in my face" and said, "You can still run this line but Louise is going to be over it, do you understand, do you understand what I'm saying." Immediately after the incident, Van Steenburgh informed Toliver that she believed Esser had spoken to her in a hostile manner to humiliate her and to retaliate against her in front of her supervisors and co-workers. Toliver said that he believed her but that nothing could be done because Bottcher would not believe the story. Later that day, Van Steenburgh quit her employment at Rival.

Van Steenburgh filed a complaint against Rival with the Equal Employment Opportunity Commission on February 27, 1996. Following receipt of a right-to-sue letter, she filed this action. A jury returned a verdict in her favor on her claims of hostile environment sexual harassment and constructive discharge. It awarded her $47,500 in back pay and $115,000 in compensatory damages. Rival moved for judgment as a matter of law or, in the alternative, for a new trial. The district court granted both of Rival's motions. It held that there was insufficient evidence at trial for the jury to find either that sexual harassment occurred within the limitations period or that Van Steenburgh was constructively discharged. In summary fashion, the court also granted Rival's alternative motion for a new trial.

## II.

We review do novo the district court's grant of Rival's motion for judgment as a matter of law. See Hathaway v. Runyon, 132 F.3d 1214, 1220-21 (8th Cir. 1997). We must look at the evidence in the light most favorable to Van Steenburgh, give her

the benefit of all reasonable inferences, and assume that the jury resolved all evidentiary conflicts in her favor. See id. at 1220. We will overturn the verdict only if no reasonable juror could have found in favor of Van Steenburgh. See id. (citing Ryther v. KARE 11, 108 F.3d 832, 836 (8th Cir.) (en banc), cert. denied, 117 S. Ct. 2510 (1997)).

The 300-day limitations period for Van Steenburgh's claims began on May 3, 1995. Rival argues that it is entitled to judgment as a matter of law because Van Steenburgh presented no evidence of discriminatory conduct that occurred after this date. Rival does not dispute that Esser harassed Van Steenburgh between early 1990 and March of 1995. It argues that the harassment ended when the last explicitly sexual act of harassment occurred.

Unlike quid pro quo harassment or other "discrete" forms of sex discrimination, hostile environment harassment is an "ongoing nightmare for the employee victim, in legal parlance, a 'continuing violation.'" Gipson v. KAS Snacktime Co., 83 F.3d 225, 229 (8th Cir. 1996). An incident within the limitations period need not satisfy the definition of sexual harassment under Title VII when viewed in isolation. See Rorie v. United Parcel Serv., Inc., 151 F.3d 757, 761 (8th Cir. 1998); Denesha v. Farmers Ins. Exch., 161 F.3d 491, 499-500 (8th Cir. 1998). Rather, the jury must be capable of perceiving the incident as "discriminatory" in light of all the prior incidents of sexual harassment. See Hathaway, 132 F.3d at 1222 (reinstating jury verdict for plaintiff because humiliating and intimidating effect of snickering noises could have been seen as stemming from prior rejection of sexual overtures); Burns v. McGregor Elec. Indus., Inc., 955 F.2d 559, 564 (8th Cir. 1992) (directing the trier of fact to focus on the cumulative effect of the harassment rather than "carv[ing] the work environment into a series of discrete incidents").

Esser's pattern of harassment involved waiting several months between incidents of direct physical contact. During the periods when no touching occurred,

Esser stared at Van Steenburgh and kept her in constant fear of retaliation. Van Steenburgh testified that she became so frightened that her job performance declined and she became clinically depressed. Thus, the hostile environment did not abruptly end after the March 1995 incident, but rather continued until Van Steenburgh left the company following the June 8, 1995, incident. See Draper v. Coeur Rochester, Inc., 147 F.3d 1104, 1109 (9th Cir. 1998) (holding that a hostile environment may continue until discharge even if no discrete incidents of harassment occur).

Rival is mistaken in asserting that there must be incidents within the limitations period that are explicitly sexual. See Nichols v. American Nat'l Ins. Co., 154 F.3d 875, 887 (8th Cir. 1998) (holding that all evidence of abusiveness is relevant to the pattern of discrimination in a continuing violation claim); Kopp v. Samaritan Health Sys., Inc., 13 F.3d 264, 269 (8th Cir. 1993) (finding shouting, derogatory remarks, and non-sexual physical contact sufficient to establish a claim for hostile environment sexual harassment). "The critical inquiry is 'whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed.'" Hathaway, 132 F.3d at 1222 (quoting Harris v. Forklift Systems, Inc., 510 U.S. 17, 25 (1993) (Ginsburg, J., concurring)). If Esser's conduct toward Van Steenburgh on June 8, viewed in the context of his prior harassment, would not have been directed toward a male employee, the jury's finding of hostile environment harassment should be affirmed.

The jury could have inferred a nexus between Esser's hostile manner of addressing Van Steenburgh in front of her supervisors and co-workers on June 8 and her repeated rejections of his prior sexual overtures. Van Steenburgh introduced evidence that Esser did not treat men the way he treated her. Rival's own witness, Sylvia Trent, testified that Esser had a "thing" for Van Steenburgh and could be obsessive about other women at the plant. Although Esser's conduct on June 8 was not as egregious as his earlier conduct, the jury could have found it to be discriminatory because Esser would not have treated a male employee the same way.

Accordingly, there was sufficient evidence of a discriminatory act within the limitations period to support the jury's finding of hostile environment sexual harassment.

Rival similarly claims that the June 8 incident was insufficient to demonstrate constructive discharge as a matter of law. This argument also fails to view the June 8 incident in the context of Esser's continuing pattern of harassment.

To demonstrate constructive discharge, a plaintiff must show that the harassment was severe enough that a reasonable person in the same position would have found the working conditions intolerable. Coffman v. Tracker Marine, L.P., 141 F.3d 1241, 1247 (8th Cir. 1998). We conclude that Van Steenburgh made such a showing. She presented evidence of a pattern of harassment that continued for more than five years. Esser repeatedly propositioned Van Steenburgh, physically accosted her on numerous occasions, and made increasingly serious threats of retaliation. The jury was thus justified in finding that a reasonable person in Van Steenburgh's position would have found the conditions at Rival intolerable.

Van Steenburgh provided Rival an adequate opportunity to remedy the situation before she quit. She formally complained to Bottcher in May of 1992. Bottcher verbally warned Esser, but failed to make a written record of the complaint or of her efforts to remedy the problem. When the harassment continued after Bottcher's warning, Van Steenburgh made another formal complaint to Bottcher in early 1994. Esser's harassing conduct failed to cease. Van Steenburgh then complained repeatedly about Esser, and about Bottcher's failure to remedy the problem, to Toliver, another supervisor. This was adequate to demonstrate that Van Steenburgh had a lack of recourse against the harassment within Rival's organization. See Howard v. Burns Bros., Inc., 149 F.3d 835, 842 (8th Cir. 1998) (holding that an employer is not liable for constructive discharge if the employee quits without allowing the employer to resolve the problem); Kimzey v. Wal-Mart Stores, Inc., 107

F.3d 568, 574-75 (8th Cir. 1997) (finding that management's general indifference to complaints supported an inference of constructive discharge). Cf. Burlington Indus., Inc. v. Ellerth, 118 S. Ct. 2257, 2270 (1998) (recognizing an affirmative defense for employers in hostile environment sexual harassment cases if they exercise reasonable care in preventing harassment and the employee fails to take advantage of anti-harassment policies); Faragher v. City of Boca Raton, 118 S. Ct. 2275, 2293 (1998) (same). Therefore, there was sufficient evidence to support the jury's finding of constructive discharge.

### III.

The district court granted Rival's alternative motion for a new trial. We review this decision for an abuse of discretion. Mears v. Nationwide Mut. Ins. Co., 91 F.3d 1118, 1123 (8th Cir. 1996). On a motion for new trial, the district court is entitled to interpret the evidence and judge the credibility of witnesses, but it may not usurp the role of the jury by granting a new trial simply because it believes other inferences and conclusions are more reasonable. See White v. Pence, 961 F.2d 776, 780-81 (8th Cir. 1992). A new trial is appropriate if the verdict is against the weight of the evidence and if allowing it to stand would result in a miscarriage of justice. See Shaffer v. Wilkes, 65 F.3d 115, 117-18 (8th Cir. 1995).

A district court must adequately articulate its reasons for overturning a jury verdict. See White, 961 F.2d at 781-82; Shaffer, 65 F.3d at 118. This is required so that the reviewing court can exercise a meaningful degree of scrutiny and safeguard parties' right to a jury trial. See White, 961 F.2d at 781. In granting the alternative motion for a new trial, the district court simply stated, "Defendant's motion for a new trial is granted should the Court of Appeals vacate or reverse this judgment for the reasons stated above." Order of December 15, 1997, at 4. In light of our holding that judgment as a matter of law should not have been granted, however, those reasons form an insufficient basis for the grant a new trial.

The parties suggest that leading questions at trial caused the district court to grant the motion. Trial errors must be pervasive, however, to warrant granting a new trial. See O'Dell v. Hercules, Inc., 904 F.2d 1194, 1200-08 (8th Cir. 1990) (rejecting multiple challenges to a district court's evidentiary rulings as a basis for a new trial); Jacobs Mfg. Co. v. Sam Brown Co., 19 F.3d 1259, 1266-67 (8th Cir. 1994) (reversing a district court's grant of a new trial based on a finding that the verdict was against the great weight of the evidence). The district court sustained several objections to leading questions, but it also encouraged some leading questions to keep the trial "moving along." Thus, it is difficult to see how leading questions could have resulted in a miscarriage of justice.

We reverse the district court's grant of judgment as a matter of law. We remand for an articulation of the reasons for granting a new trial that will enable us to conduct the meaningful review of that ruling that is required by White v. Pence.

JOHN R. GIBSON, Circuit Judge, concurring and dissenting in part.

I concur in Parts I and II of the court's opinion, and with the holding that there is sufficient evidence to support the jury's finding of constructive discharge. I dissent from Part III of the court's opinion and in the remand of this case to the district court for further review of whether the jury's verdict was against the weight of the evidence. I would reverse entirely and order reinstatement of the judgment based upon the jury verdict.

The district court order granting the alternative new trial, quoted in full in the court's opinion, did not so much as mention the weight of the evidence. The discussion in Part III of the court's opinion today simply assumes that this was the ground upon which the district court was relying.

We have long held that when the district court grants a motion for new trial on the ground that the verdict is against the weight of the evidence, it must clearly articulate its reasons for doing so. The district court must carefully balance the evidence presented by each side; only then can it reach an informed determination of whether the verdict would work a miscarriage of justice if left undisturbed. See White v. Pence, 961 F.2d 776, 781-82 (8th Cir. 1992); Stafford v. Neurological Medicine, Inc., 811 F.2d 470, 474-75 (8th Cir. 1987); Goldsmith v. Diamond Shamrock Corp., 767 F.2d 411, 416 (8th Cir. 1985); Fireman's Fund Ins. Co. v. Aalco Wrecking Co., 466 F.2d 179, 187 (8th Cir. 1972) ("When through judicial balancing the trial court determines that the first trial has resulted in a miscarriage of justice, the court may order a new trial, otherwise not."), cert. denied, 410 U.S. 930 (1973). A careful articulation of the district court's reasoning is necessary so that we "can exercise a closer degree of scrutiny and supervision ... in order to protect the litigants' right to a jury trial." White, 961 F.2d at 781 (quoting Fireman's Fund, 466 F.2d at 187). The district court, as the trial court, has the sole authority to grant a new trial on the ground that the verdict is against the weight of the evidence. It must exercise that authority with great care, lest it usurp the jury's rightful function.

The district court's order granting a new trial does not come close to meeting these standards. The district court failed to state that the verdict was against the weight of the evidence or that the verdict would work a miscarriage of justice if allowed to stand. These are the ultimate findings to be made by the district court in granting such a motion. In addition, the district court performed none of the requisite judicial balancing so as to demonstrate why Rival's evidence manifestly outweighed Van Steenburgh's. Such articulation has long been held necessary to support the district court's conclusion so that this Court can properly review that conclusion, exercising the scrutiny necessary to protect the parties' right to a jury trial. White, 961 F.2d at 781; Stafford, 811 F.2d at 474. The district court thus failed not only in stating the required conclusions, but also in making any attempt to support them.

Most of the testimony in this case came from Van Steenburgh, although there were other employees of Rival who testified about what they had seen and what Van Steenburgh had told them about Esser's conduct. Esser was deceased at the time of trial and did not testify. The controversy involved the interaction of two individuals. In this simple case, any conflicts raised by the evidence should have been resolved by the jury. See Stafford, 811 F.2d at 475; Goldsmith, 767 F.2d at 416-17. When "the evidence is such that reasonable men may differ as to the result, ... the determination should properly be left for the jury." White, 961 F.2d at 781 (quoting Fireman's Fund, 466 F.2d at 187). When the district court has not adequately justified its decision to grant a new trial, we have on several occasions simply reversed that decision when the record does not permit the conclusion that the jury's verdict was against the manifest weight of the evidence. See Goldsmith, 767 F.2d at 416-17; Stafford, 811 F.2d at 474-76; Fireman's Fund, 466 F.2d at 187-88.

The district court granted the new trial without following the procedures that we have mandated for over twenty-five years, failing to state the basis for granting the motion and articulating no analysis or reasons for its ruling. The order and record before us simply provide no basis to remand the case, for to do so would essentially ignore our numerous precedents relating to the standards for granting a new trial on the basis that the verdict is against the weight of the evidence.

I agree that we should reverse the ruling granting judgment as a matter of law, but believe that we should also reverse the grant of a new trial and order that the jury's verdict be reinstated.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-10-