# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-2620
No. 98-2621

_____

| | | |
|---|---|---|
| Dominium Management Services, Inc., | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| Nationwide Housing Group; | * | |
| Nationwide Development Group, LP, | * | Appeals from the United States |
| | * | District Court for the |
| Defendants - Cross-Defendants - | * | District of Minnesota. |
| Appellees | * | |
| | * | |
| Pinnacle Group Realty Management | * | |
| Company, | * | |
| | * | |
| Defendant - Cross-Claimant - | * | |
| Appellant. | * | |

_____

Submitted:  May 13, 1999

Filed:    October 28, 1999

_____

Before RICHARD S. ARNOLD, JOHN R. GIBSON, and BOWMAN, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.

Dominium Management Services, Inc. brought this diversity action against Pinnacle Group Realty Management Company, Nationwide Housing Group, and Nationwide Development Group, LP (we refer to the latter two parties collectively as "Nationwide") seeking a declaratory judgment that it had a binding agreement with Nationwide under which it was to purchase Nationwide's real estate partnership interests. Pinnacle cross-claimed that Nationwide had breached an earlier similar contract. The jury found that Nationwide and Pinnacle entered into an enforceable contract, that Nationwide breached the agreement, and that Pinnacle was entitled to compensatory damages of $18.3 million. The district court granted in part Nationwide's motion for judgment as a matter of law as to Pinnacle's claim for management fees and accounts receivable, ruling that the evidence did not support the damages awarded for that portion of the claim. With respect to the jury's award for the value of the partnership interest, the court deducted the price Pinnacle would have paid, reducing the award to $2.8 million. The district court also conditionally ordered a new trial on damages unless Pinnacle consents to a remittitur of $15.5 million from the jury's award and to an entry of judgment in the amount of $2.8 million. Pinnacle appeals, arguing that the district court erred by granting judgment as a matter of law on the damages issues and by conditionally ordering a new trial. We reverse the partial grant of judgment as a matter of law and affirm the conditional grant of a new trial.

## I.

Nationwide Housing Group, Inc. is the general partner of Nationwide Development Group, LP which, at the time in question, was the general partner and property manager of approximately forty real estate limited partnerships, which we will refer to as the Portfolio Partnerships. The Portfolio Partnerships were created to own and operate low-income housing that qualified for federal tax credits. Nationwide acted as property manager for the more than eighty apartment buildings owned by the Portfolio Partnerships, overseeing approximately 5,300 apartments. Various individuals and corporations invested in the Portfolio Partnerships by purchasing partnership units

-2-

and becoming limited partners. In addition, Nationwide formed two limited partnerships with exclusively corporate and institutional investors, the Institutional Fund and the Opportunity Fund, to invest in the Portfolio Partnerships.

In 1996, Nationwide faced significant financial and operational difficulties. It had debts in excess of its assets and was unable to meet its operational expenses. Nationwide contracted for Dominium Management Services, Inc. to take over management of the majority of the Portfolio Partnerships' real estate for a period of one year. It also borrowed money from Dominium to meet its immediate cash needs.[1] Nationwide's Institutional Fund investors formed an Advisory Group to oversee Nationwide in the management of the Institutional Fund portfolio. After Nationwide began looking for a buyer to purchase its interests and replace it as general partner in all of the Portfolio Partnerships, the Advisory Group was actively involved in the selection of a new general partner for the limited partnerships controlled by the Institutional Fund. In its quest to find a buyer, Nationwide ultimately solicited proposals from at least five firms, including Dominium and Pinnacle Group Realty Management Co.

On July 24, 1996, Dominium and Pinnacle met separately with the Advisory Group and Nationwide's three principals, presenting proposals for the acquisition of Nationwide's property management rights. Both Dominium and Pinnacle concluded that an opportunity to purchase Nationwide's general partnership interests also existed. Over the next several weeks, the companies continued to compete for the Nationwide deal. On August 14, Dominium sent a proposal letter to Nationwide. After making changes to the letter, Laura Lynch, the executive vice president of Nationwide, discussed the

---

[1]The numerous factual complexities regarding this transaction need not be outlined in detail. The loans from Dominium were accomplished by promissory notes from Nationwide and its three principals and execution of pledge and security agreements with Dominium.

Dominium proposal with Stan Harrelson, the president of Pinnacle. Pinnacle then sent a letter agreement to Nationwide on the 15th, and Nationwide proposed one change.

On August 16, Pinnacle submitted a "Revised Letter of Agreement" to Nationwide. Michael Weyrick, Nationwide's president, G. Davis Slajchert, its secretary, and Lynch signed the agreement on behalf of Nationwide and returned it to Pinnacle. On August 19, Harrelson and Lynch discussed preparing the documents necessary to implement their agreement. The next day, Dominium delivered a revised proposal to Nationwide. The Advisory Group met on August 20 and listened to presentations made by Pinnacle and Dominium. The institutional investors decided they preferred Dominium as the new general partner of the Institutional Fund partnerships, and the following day the Advisory Group informed Dominium and Pinnacle of this decision.

On the morning of August 22, Pinnacle wire-transferred $162,000 to Nationwide's attorney in connection with the Revised Letter of Agreement. The next day, Nationwide sent a letter to Pinnacle stating that it had chosen to pursue other alternatives because "Pinnacle was unable to perform under the revised letter of agreement dated August 16, 1996 between Pinnacle and Nationwide Housing Group." Nationwide returned the $162,000. Harrelson responded in a letter dated August 26 that asserted:

> Your letter does not state how we are unable to perform. In truth, contrary to your claim, Pinnacle and its nominee, Triad, have performed and remain fully able to perform[.] Indeed, we have spent substantial time and money performing to date . . .[.] While we have performed, you have not. And now by your August 23, 1996 letter, you are attempting to renege on our agreement. We will not allow you to do so.

Meanwhile, on August 23 Nationwide's three principals signed a proposal from Dominium outlining terms under which Dominium would acquire Nationwide's interests

-4-

and substitute for Nationwide as general partner in the Portfolio Partnerships. This litigation followed shortly thereafter.

Dominium sought a declaratory judgment that the agreement between it and Nationwide was valid and could proceed.[2] Pinnacle filed cross-claims against Nationwide for breach of contract, breach of the implied covenant of good faith and fair dealing, and promissory estoppel, and counterclaims against Dominium for tortious interference with contract and interference with prospective business relations. Pinnacle also sought preliminary injunctive relief, which the district court denied, in an attempt to prevent the Dominium-Nationwide deal from proceeding. After a seven-day trial, the jury returned a special verdict in Pinnacle's favor, affirmatively answering an interrogatory that Pinnacle and Nationwide entered into an enforceable contract for the acquisition of all Nationwide's partnership interests and assets and that Nationwide breached the contract.[3] The jury awarded $18.3 million in compensatory damages. The jury penned notations in the margin following the damages interrogatory, including calculations that both Pinnacle and Nationwide agree show $7.3 million for lost property management fees, $6 million for accounts receivable, and $5 million for the partnership interest.

On post-judgment motions, the district court partially granted Nationwide's motion for judgment as a matter of law, holding that there was insufficient evidence to support an award of damages based on either property management fees or accounts receivable. The district court denied the motion with respect to the $5 million the jury awarded as the value of Nationwide's general partnership interest, subtracted the $2.2

___

[2]Immediately afterward, Pinnacle filed an action in California state court, seeking injunctive relief enjoining Nationwide from selling its assets. It later voluntarily dismissed the action.

[3]The jury also found that Dominium did not intentionally interfere with the Pinnacle-Nationwide contract.

million purchase price without dispute from Pinnacle, and arrived at a final figure of $2.8 million. The district court, in the event that we reversed its judgment as a matter of law, ordered a conditional new trial unless Pinnacle consents to a remittitur and to entry of judgment in the amount of $2.8 million.

This appeal followed, with Pinnacle arguing that the district court erred by entering judgment as a matter of law with respect to the management fees and the accounts receivable, and by granting the conditional motion for a new trial. Pinnacle also argues that erroneous evidentiary rulings and a misleading jury instruction require a new trial on its claims against Dominium. Finally, Pinnacle challenges the district court's failure to grant a declaratory judgment that the Dominium-Nationwide agreement is invalid. Nationwide argues that the district court erred by partially denying its motion for judgment as a matter of law because Pinnacle failed to prove breach of contract and because the jury award for the value of Nationwide's general partnership interest was not supported by the evidence. Nationwide also asserts that Pinnacle's claims were not pursued in the name of the real party in interest.

## II.

We review a district court's grant of judgment as a matter of law de novo. Van Steenburgh v. Rival Co., 171 F.3d 1155, 1158 (8th Cir. 1999). Judgment as a matter of law is warranted when no "legally sufficient evidentiary basis" exists for a reasonable jury to have found in favor of a party on an issue on which the party has been fully heard. Fed. R. Civ. Pro. 50(a)(1). We must view the evidence in the light most favorable to the nonmoving party while giving that party the benefit of all reasonable inferences. See Van Steenburgh, 171 F.3d at 1158. Judgment as a matter of law is appropriate only when all the evidence points in one direction and there are no reasonable interpretations that would support the jury's verdict. See Mears v. Nationwide Mut. Ins. Co., 91 F.3d 1118, 1122 (8th Cir. 1996).

-6-

## A.

California law, on which the district court and the parties rely, provides that after a contract is breached, "the measure of damages . . . is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom."  Cal. Civil Code § 3300 (West 1999).  However, "[n]o damages can be recovered for a breach of contract which are not clearly ascertainable in both their nature and origin."  Cal. Civil Code § 3301 (West 1999).  When it is clear that a party has been damaged, uncertainty regarding the precise amount of damages is not a reason to deny recovery.  See California Lettuce Growers, Inc. v. Union Sugar Co., 289 P.2d 785, 793 (Cal. 1955).  "[T]he fact that the amount of damage may not be susceptible of exact proof or may be uncertain, contingent or difficult of ascertainment does not bar recovery."  Id.  See also GHK Assocs. v. Mayer Group, Inc., 274 Cal. Rptr. 168, 179 (Cal. Ct. App. 1990) (stating that "[w]here the fact of damages is certain, the amount of damages need not be calculated with absolute certainty.").

Pinnacle's evidence regarding property management fees included analyses prepared by Nationwide and Dominium estimating the gross management fees that could be earned by managing the partnerships' properties.  When Nationwide was looking for a property manager in early July 1996, it gave Pinnacle a "Property Management Fee Summary" that estimated the gross property management fees to be $1,819,162 annually.  The Dominium analysis of the Nationwide portfolio, given to Pinnacle by Nationwide during later negotiations, estimated the fees to be $1,950,513. Nationwide's assertion that there was insufficient evidence to justify the award of management fees collapses in light of both documents sent to Pinnacle by Nationwide representing the amount of fees that could be earned from the portfolio properties.  Clearly, some amount of fees could be earned from managing the properties.  Because Pinnacle showed the fact of damage, uncertainty regarding the amount of damage does not bar its recovery.

We agree with the district court's characterization of the award of lost property management fees as an award of lost profits. Future profits, by their nature, are more difficult to ascertain than other types of damages. Under California law, the amount of lost profits need not be established with certainty, and it is enough to show a reasonable probability that they would have been earned in the absence of the contract breach. See Nelson v. Reisner, 331 P.2d 17, 23-24 (Cal. 1958). In GHK Associates, supra, the breaching party claimed that awarding lost profits was too speculative even though its own projections indicated a range of potential net profits. 274 Cal Rptr. at 181. GHK Associates upheld the trial court's damages calculation that was based on actual profits, using the projections to support the conclusion that the injured party would not be overcompensated by the trial court's award. Id. In this case, Nationwide's own analysis estimated the amount of property management fees that could be earned annually from the properties, demonstrating a "reasonable probability" that Pinnacle could have earned some amount of fees in the absence of Nationwide's breach.

Officers of Pinnacle, Nationwide, and Dominium testified regarding net profits expected on the management fees and the number of years that the fees would be forthcoming. Harrelson testified that Pinnacle expected to net as much as 60% of the property management fees once it had acquired Nationwide's interests. Don Markey, the chief financial officer of Pinnacle, testified that Pinnacle expected to net $1.1 million annually on the Nationwide portfolio based on Nationwide's representation that the fees would total $1.8 million per year. At trial, Weyrick confirmed his deposition testimony that his estimate of net profit on the management fees would be around 50% of the gross profit. David Brierton, Dominium's president, testified that he expected the "gross margin" to be about 50% of the total management fees. Because overhead costs were still to be deducted from the "gross margin," the implication was that net profits would have been somewhat less than 50%. Armand Brachman, the vice president of Dominium, testified that Dominium earned between $300,000 and $500,000 in property management fees in 18 months after purchasing Nationwide's interests, and after an investment of $5 million that included the purchase price.

Brachman also testified that he expected Dominium's relationship with the limited partnerships to last fifteen years or more based on the length of the federal tax credit program. Harrelson testified that he believed Pinnacle's tenure as property manager would have lasted a substantial period of time, possibly ten to fifteen years, also basing his assumption on the tax credit program.

From the damages calculations in the margin of the verdict form, it is evident that the jury found that Pinnacle would have earned $900,000 in management fees per year, multiplying $1.8 million in gross profits by 50% to arrive at net profits. To calculate the total property management fees that Pinnacle lost due to Nationwide's breach, the jury determined that Pinnacle would have had incoming fees for ten years after purchasing Nationwide's interests. It then discounted nine years of lost fees to present value, added this figure to the $900,000 Pinnacle lost prior to trial, and arrived at a total of $7.3 million in lost management fees. Viewing the evidence in the light most favorable to Pinnacle and giving it the benefit of all reasonable inferences, we conclude that the evidence was sufficient to allow a reasonable jury to arrive at this figure.

**B.**

As with the property management fees, the evidence presented regarding the value of the accounts receivable came from documents Nationwide gave to Pinnacle during the course of their negotiations. The accounts receivable consisted of money that the Portfolio Partnerships owed to Nationwide as the general partner. The first document Nationwide gave Pinnacle showed a total of $8,641,245 in loans receivable from partnerships. Harrelson testified that Pinnacle later obtained an updated list from Nationwide showing more than $9 million in accounts receivable. This document, preceded by a fax cover sheet indicating that it contained "NHG & NDG RECEIVABLES FROM PARTNERSHIPS," included a total of $9,363,231. A document entitled "Due to Nationwide Management Group May 31, 1996" listed amounts due to NMG, the in-house management company for Nationwide, as

$420,340.61. Markey testified that Nationwide represented that its receivables were in the range of $9.5 to $9.7 million. He also testified that he believed Nationwide's representations as to the amount and the fact the receivables were collectible. Once Pinnacle showed the fact of damage, i.e., that Nationwide's breach prevented it from purchasing some amount of accounts receivable, the fact that the amount it could have collected was subject to debate does not bar its recovery.

Markey envisioned refinancing the real estate portfolio and using the proceeds to repay Pinnacle the money owed by the limited partnerships within three to six months after taking over the portfolio. Basil Rallis, an independent real estate consultant who had been working with Pinnacle on the Nationwide deal and who was experienced in this type of refinancing, testified that the portfolio could be refinanced in ninety days. Even Weyrick confirmed he had testified in his deposition "that those receivables would be collected in a fairly short period of time." Finally, Harrelson testified that Pinnacle was planning to forgive the $3.5 million that the Institutional Fund partnerships owed to Nationwide as the general partner. Viewing this evidence in the light most favorable to Pinnacle and giving it the benefit of all reasonable inferences, we conclude it was sufficient basis for a reasonable jury to award $6 million to Pinnacle for the value of the accounts receivable. Because the jury's award of management fees and accounts receivable had a legally sufficient evidentiary basis, we reverse the district court's grant of judgment as a matter of law on both damage awards.

### III.

We review a district court's conditional grant of a new trial for abuse of discretion. Mears v. Nationwide Mut. Ins. Co., 91 F.3d 1118, 1123 (8th Cir. 1996). In passing on a motion for a new trial premised on the weight of the evidence, the district court may rely on its own reading of the evidence and grant a new trial even where substantial evidence exists to support the verdict. See White v. Pence, 961 F.2d 776, 780 (8th Cir. 1992). Ultimately, the district court must determine if there will be

-10-

a miscarriage of justice if the jury's verdict is allowed to stand. Id. If the district court grants a new trial, it must articulate its reasons for reversing the jury's verdict. Id. at 781. As the reviewing court, we must be able to closely scrutinize the district court's decision in order to protect the right to a jury trial. Id. (quoting Fireman's Fund Ins. Co. v. Aalco Wrecking Co., 466 F.2d 179, 187 (8th Cir. 1972), cert. denied, 410 U.S. 930 (1973)).

We recently reaffirmed the necessity of an adequate statement of the reasons for a district court's grant of a new trial. See Van Steenburgh v. Rival Co., 171 F.3d 1155, 1160 (8th Cir. 1999). In that case, the district court gave no reasons for its grant of a new trial other than "the reasons stated above," referring to those reasons it gave for granting judgment as a matter of law. Id. at 1161. We remanded the case to allow the district court to articulate its reasons so that we would be able to meaningfully review its grant of a new trial. Id. As we have emphasized before, the standards for granting judgment as a matter of law differ from the standards for granting a new trial. See White, 961 F.2d at 779.

In this case, after setting forth the standard for granting a new trial, the district court gave the following reasons for its decision to grant a new trial on damages: "[T]he jury's verdict shocks the conscience of the court, considering the complete failure of proof of lost profits which necessarily resulted in the jury's resort to speculation. The court determines that a miscarriage of justice would result if the court were to allow the jury's verdict to stand." Dominium Management Servs., Inc. v. Nationwide Hous. Group, 3 F. Supp. 2d 1054, 1064-65 (D.Minn. 1998). Admittedly, the court reiterated its statement on the lack of evidence of lost profits and the jury's resort to speculation. However, it first outlined the standard for granting a new trial and then followed with statements applying the standard. The district court's articulation of the new trial standard as well as its statement that the verdict "shocks the conscience" and would result in a "miscarriage of justice" convinces us that it applied the correct standard. See

-11-

Frumkin v. Mayo Clinic, 965 F.2d 620, 625 (8th Cir. 1992) (noting the significance of the "verbal formulae" when granting a new trial).

We hasten to add that these "verbal formulae" are insufficient, standing alone, to justify the grant of a new trial. This is a close case. While the court could have engaged in a more extensive analysis of the evidence, it said enough to demonstrate that the proper standard was applied and to convince us that there was no abuse of discretion. We affirm the conditional grant of a new trial as to the damages for lost property management fees and accounts receivable.

The district court's opinion reduced the portion of the damages that were based on the value of the partnership interest, but left the remainder intact. Insofar as its order may be read to include the value of the partnership interest as an issue to be retried, the order lacks support for doing so, and this portion of the award must simply be affirmed.

## IV.

Pinnacle asserts that it is entitled to a new trial on its tortious interference claim against Dominium. It bases this assertion on three errors alleged to have been committed by the district court: first, the exclusion of two letters Pinnacle sent to Dominium informing it of the Pinnacle-Nationwide agreement after Nationwide terminated negotiations; second, the admission of testimony that Dominium would have to fire employees hired to work on the Nationwide portfolio if it were to lose the case; and third, the jury instruction stating that: "If you determine that a party is entitled to damages, you are instructed not to compensate that party more than once for the same loss." We will not reverse a district court's denial of a new trial absent a clear abuse of discretion. McKnight v. Johnson Controls, Inc., 36 F.3d 1396, 1400 (8th Cir. 1994). The abuse of discretion standard also applies to our review of the district court's evidentiary rulings, Crane v. Crest Tankers, Inc., 47 F.3d 292, 294 (8th Cir. 1995), and

to our review of jury instructions, <u>Klisch v. MeritCare Med. Group, Inc.</u>, 134 F.3d 1356, 1358 (8th Cir. 1998). After reviewing the record, we find no abuse of discretion. We affirm the district court's denial of Pinnacle's motion for a new trial.

Pinnacle also argues that the district court erred by treating its motion for a declaratory judgment that the Dominium-Nationwide contract was unenforceable as an attempt to obtain specific performance of the Pinnacle-Nationwide agreement, and by subsequently denying the motion. We may affirm the district court's judgment on any ground supported by the record. <u>See</u> <u>Wisdom v. First Midwest Bank</u>, 167 F.3d 402, 406 (8th Cir. 1999) (quoting <u>Stevens v. Redwing</u>, 146 F.3d 538, 543 (8th Cir. 1998)). The declaratory judgment requested by Pinnacle would serve no useful purpose and would engender more uncertainty and controversy than it would resolve. We hold that the district court properly declined to grant Pinnacle's motion for a declaratory judgment.

In support of its contention that it is entitled to judgment as a matter of law on the issue of breach of contract, Nationwide argues that the Revised Letter of Agreement was merely an agreement to negotiate a contract in the future and as such was not binding. Whether an agreement is final or merely an agreement to agree depends upon the parties' intentions. <u>See</u> <u>Beck v. American Health Group Int'l, Inc.</u>, 260 Cal. Rptr. 237, 241 (Cal. Ct. App. 1989). If the agreement is indefinite, the parties' conduct after execution and prior to any controversy may be considered to determine their intentions. <u>See</u> <u>Oceanside 84, Ltd. v. Fidelity Fed. Bank</u>, 66 Cal. Rptr. 2d 487, 492 (Cal. Ct. App. 1997). After viewing the record in the light most favorable to Pinnacle, we conclude that there was sufficient evidence from which a reasonable jury could find that Nationwide and Pinnacle intended to, and did, enter into a final agreement and that Nationwide subsequently breached the agreement.

The district court, in denying this portion of Nationwide's motion for judgment as a matter of law, rejected the argument that a clause in the Revised Letter of

Agreement was a condition that required third-party approval before Pinnacle would be entitled to enforce the agreement. The court determined that the language of the clause was susceptible to different interpretations, depending on the credibility of contradictory extrinsic evidence, and accordingly was an issue for the jury to decide. Dominium Management Servs., Inc. v. Nationwide Hous. Group, 3 F. Supp. 2d 1054, 1062 (D.Minn. 1998). We agree with the district court's analysis.

Nationwide also appeals the district court's denial of its motion for judgment as a matter of law that there was insufficient evidence to support the jury's $5 million valuation of the general partnership interest in the Portfolio Partnerships. Lynch testified that an analysis done in late 1995 or early 1996 placed the value of this interest, including tax credits, cash flow, and distributions, at somewhere more than $5 million. Weyrick testified that his estimate of the value of the general partnership's interest in the tax credits was approximately one to two million dollars. We agree with the district court that there was sufficient evidence on which the jury could base its verdict. Applying the standards for judgment as a matter of law set forth earlier in our opinion, we affirm the district court's decision denying Nationwide judgment as a matter of law on the issues of contract breach and value of the general partnership interest.

Finally, Nationwide argues that the district court should have granted judgment as a matter of law in its favor because Pinnacle was not the real party in interest as required by Federal Rule of Civil Procedure 17(a). Nationwide contends that First West Companies and Triad Development, Inc., two companies that were to participate in a joint venture with Pinnacle if the deal with Nationwide had gone through, should have been parties to the action. We are not persuaded. The August 16, 1996 Revised Letter of Agreement that the jury found to be a binding contract was signed by representatives of Pinnacle and Nationwide. First West and Triad, though they may have been possible beneficiaries of the agreement, were not parties to it. The district court decided this issue on the ground that Nationwide had waived the defense because

it failed to present it earlier, and then noted that Nationwide's argument failed on the merits. We agree.

## V.

For the foregoing reasons, we reverse the district court's grant of judgment as a matter of law. We affirm the conditional grant of a new trial on the issue of damages as to property management fees and accounts receivable. We also affirm that portion of the award establishing damages for the partnership interest.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.