# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-1297

_____

Linda Roddy,

          Appellant,

v.

Monsanto Company,

          Appellee.

Appeal from the United States District Court for the Eastern District of Missouri

[UNPUBLISHED]

_____

Submitted: January 9, 2001
Filed: May 25, 2001

_____

Before BEAM and MORRIS SHEPPARD ARNOLD, Circuit Judges, and ALSOP,[1] District Judge.

_____

ALSOP, District Judge

Linda Roddy alleges in this case that Monsanto Company ("Monsanto"), her former employer, in various ways violated Title VII of the Civil Rights Act of 1964, 42

_____

[1] The Honorable Donald D. Alsop, United States District Judge for the District of Minnesota, sitting by designation.

U.S.C. § 2000e et seq., and 42 U.S.C. § 1981. The trial court[2] granted summary judgment to Monsanto on some of Roddy's claims. The remaining claims were tried to a jury, which returned a verdict in favor of Monsanto. On appeal, Roddy argues that the trial court erred in granting partial summary judgment and in excluding certain evidence from consideration by the jury. We affirm.

Roddy began working as a laboratory technician in a south St. Louis Monsanto plant in 1974. The common understanding at the plant was that Roddy and other black women were hired to fill a "quota." For several years after she was hired, Roddy was forced to contend with inappropriate behavior from other Monsanto employees, including one of her supervisors. During the 1970s and much of the 1980s, Roddy had a supervisor who styled himself as a "male chauvinist pig" and who displayed a toy pig on his desk as a symbol of that status. This supervisor kept a notebook devoted to the activities of black female employees under his supervision, met with those black female employees only in a darkened room, and seems to have applied a different disciplinary standard to those black female employees. This supervisor also discouraged those black female employees, including Roddy, from applying for higher-level positions at the Monsanto plant, asserting that such positions involved heavier labor and thus were unsuitable for women. Two other persons became Roddy's supervisors in 1990, and those persons did not conduct themselves in a similarly egregious manner.

---

[2] The Honorable Frederick R. Buckles, United States Magistrate Judge, Eastern District of Missouri, hearing the case with consent of the parties pursuant to 28 U.S.C. § 636(c).

Non-supervisory Monsanto employees also occasionally harassed Roddy. One day in 1978, Roddy arrived at work and discovered a mannequin made up to represent her holding a sign with a vulgar sexual message. An unknown person cut pages out of Roddy's laboratory notebook in 1980. Roddy informed her supervisors of these incidents, but Monsanto conducted no investigation. Bruce Cartee, one of Roddy's co-workers, kicked Roddy in April 1991, and Roddy believed he did so because Roddy is black and a woman. Roddy reported this incident as well. In this instance, Roddy's supervisors met with Roddy and Cartee, and Cartee apologized to Roddy. Monsanto imposed no other discipline, and no later incidents occurred involving Roddy and Cartee. Cartee retired in 1995. When Roddy learned in 1996 that Cartee planned to return to Monsanto, Roddy complained to her supervisors, and Roddy's supervisors assured her that she would not be required to work alone with Cartee. Roddy considered subsequent adjustments in her work schedule to be a form of demotion. Roddy left her employment with Monsanto in August 1997, a few months after Cartee returned.

Roddy filed a complaint with the EEOC in 1996, charging that Monsanto had denied her promotions and salary increases on the basis of her race and sex and because Roddy had complained of discrimination against her in the workplace. The EEOC issued Roddy a right to sue letter in December 1996, and Roddy filed a complaint in federal court in March 1997. In her complaint as amended, Roddy claims that Monsanto denied her promotions, withheld pay raises, subjected her to harassment and a hostile work environment, and retaliated against her for engaging in protected conduct, all in violation of Title VII. Roddy also claims that the same actions by Monsanto violated 42 U.S.C. § 1981 and that Monsanto constructively discharged her

in violation of § 1981.  The trial court granted Monsanto's motion for summary judgment on the harassment and hostile work environment claims, holding that those claims were not presented to the EEOC pursuant to Title VII and that all acts of harassment about which Roddy complains occurred outside the statute of limitations applicable to § 1981.  The trial court granted summary judgment on the constructive discharge claim as well, holding as a matter of law that Roddy's situation at Monsanto at the time she resigned was not so intolerable as to constitute a constructive discharge.

The matter proceeded to trial on the issues of discriminatory treatment and retaliation.  Roddy sought to offer as evidence, inter alia, a chart comparing Roddy's salary for a particular year with the salaries of other laboratory technicians at the Monsanto plant where she worked.  The year-by-year comparisons on the chart went back to 1975, and the trial court excluded the chart because the chart included information irrelevant to discrete instances of discrimination in rates of pay within the applicable statute of limitations.  The facts underlying the chart ultimately came into evidence, albeit not in the form Roddy desired.  The trial court also excluded some "background evidence" Roddy offered, including testimony about the incidents described above and about more recent incidents not directly involving Roddy, such as a sexually graphic conversation Roddy heard accidentally broadcast over the plant intercom and the discovery at the plant of a rope tied to resemble a noose.  The trial court excluded this "background evidence" as irrelevant to the issues at trial and as more prejudicial than probative under FRE 403.

Roddy argues here that material factual issues precluded summary judgment on the claims dismissed prior to trial and that the trial court's evidentiary rulings unfairly

prejudiced her case with respect to the claims submitted to the jury. We review the trial court's grant of summary judgment <u>de novo</u>, examining the record developed below to determine whether no genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law. <u>Kopp v. Samaritan Health Sys., Inc.</u>, 13 F.3d 264, 268-69 (8th Cir. 1993). We review the trial court's evidentiary rulings for abuse of discretion, and we will grant a new trial on the basis of incorrect rulings only if a different outcome is likely. <u>EEOC v. HBE Corp.</u>, 135 F.3d 543, 551 (8th Cir. 1998).

The trial court granted Monsanto summary judgment on Roddy's hostile work environment claim because Roddy had not demonstrated an instance of harassment or abusive conduct within the five-year statute of limitations applicable to Roddy's claim under 42 U.S.C. § 1981.[3] <u>See</u> <u>Drake v. Southwestern Bell Tel. Co.</u>, 553 F.2d 1185, 1188 (8th Cir. 1977) (applying Missouri five-year statute of limitations to a cause of action under § 1981). According to the trial court, the last act of harassment directed at Roddy was the kicking incident in April 1991, and the statute of limitations ran back only to March 1992. Although Roddy agrees that conduct prior to March 1992 is not actionable, Roddy contends that the record as a whole shows the existence of a pattern of harassment more recently than March 1992. <u>See</u> <u>Van Steenburgh v. Rival Co.</u>, 171 F.3d 1155, 1159 (8th Cir. 1999) (holding a hostile work environment claim viable when the cumulative effects of a prolonged pattern of harassment extended into the limitations period). However, even assuming that Roddy suffered through a hostile

---

[3] Roddy does not challenge the trial court's grant of summary judgment on her hostile work environment claim under Title VII.

work environment earlier in her career, the incidents she relies upon that occurred during the limitations period have no specific connection to earlier events. The conduct within the limitations period consists of nothing more than "a few isolated incidents" of problematic behavior, Kimzey v. Wal-Mart Stores, Inc., 107 F.3d 568, 573 (8th Cir. 1997), and we can discern no pattern of action by Monsanto sufficient to allow all the incidents Roddy describes to be considered together as a continuing violation of the law.

The trial court's grant of summary judgment on Roddy's constructive discharge claim was proper for similar reasons. An employee is constructively discharged if an employer renders the employee's working conditions so intolerable that the employee is forced to quit. Henderson v. Simmons Foods, Inc., 217 F.3d 612, 617 (8th Cir. 2000). Evidence of unlawful discrimination in itself does not establish a constructive discharge, Coffman v. Tracker Marine, L.P., 141 F.3d 1241, 1247 (8th Cir. 1998), nor does an employee's dissatisfaction with working conditions. Tidwell v. Meyer's Bakeries, Inc., 93 F.3d 490, 496 (8th Cir. 1996). Roddy argues that Cartee's return to Monsanto coupled with Monsanto's perceived unresponsiveness to her complaints compelled Roddy to quit. As the trial court noted, however, Monsanto took Roddy's complaints about Cartee into account in making work assignments, and Roddy's conclusion that Monsanto was insensitive to her requests was objectively unreasonable in 1997 when Roddy left Monsanto. See West v. Marion Merrell Dow, Inc., 54 F.3d 493, 497 (8th Cir. 1995) (holding that employee's working conditions are evaluated under an objective standard).

Finally, we see no reversible error in the trial court's evidentiary rulings. The facts summarized in the salary chart the trial court excluded came into evidence in other ways, and the only effect of excluding the chart was to deprive the jury of a convenient reference for this information. The exclusion of the chart could not have affected the outcome because the evidence Roddy offered was before the jury in another form. The exclusion of background evidence presents a closer question because, as Roddy argues, evidence of unflattering employment practices generally is admissible in discrimination cases. Estes v. Dick Smith Ford, Inc., 856 F.2d 1097, 1103 (8th Cir. 1988). The trial court, however, retains discretion to exclude such evidence as irrelevant, Summit v. S-B Power Tool, 121 F.3d 416, 422 (8th Cir. 1997), cert. denied, 523 U.S. 1004 (1998), or as more prejudicial than probative. Easley v. American Greetings Corp., 158 F.3d 974, 977 (8th Cir. 1998). The issue before the jury was whether Monsanto unlawfully had denied Roddy promotions and raises during and after 1992. The background evidence the trial court excluded had no clear connection with Monsanto decisionmakers within that time frame or, in some instances, even with Roddy herself. In those circumstances, the exclusion of the evidence was not an abuse of discretion, and the exclusion did not unfairly prejudice Roddy's presentation of her case.

For the foregoing reasons, we affirm the judgment in all respects.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.